W. B. FRY v. D. A. B. CURRIE and others.

*Guardian and Ward—Ejectment—Verdict—Evidence—Judge's Charge.*

1. The law applicable to this case did not require actual service of process upon infant defendants: it was sufficient, if served upon the guardian *ad litem;* and there is no defect in the proceedings resulting in a sale of the land of the infants.

2. In ejectment, where it is alleged that the jury gave undue weight to evidence they were directed not to consider in fixing a disputed boundary, the complaining party must seek his remedy in a motion for a new trial addressed to the discretion of the presiding judge. An assignment of error upon such ground will not be entertained here. The court intimate that in this case the excluded evidence (declaration of grantor in a deed) is competent in aid of location of boundary of a tract of land adjoining the grantor's.

3. The surveyor's testimony and the declarations of the aged persons, since deceased, bearing upon the location, were properly left to the jury, who alone must determine the value of the evidence as tending to show the true position of the land in dispute. The court can not coerce them to find a fact upon evidence they disbelieve.

4. An omission to give a charge to which a party would have been entitled is not error, unless the same was requested on the trial and refused. THE CODE, § 412, construed.

(*White* v. *Albertson,* 3 Dev., 241; *Matthews* v. *Joyce,* 85 N. C., 258; *Raiford* v. *Peden,* 10 Ired., 466; *Bonner* v. *Tier,* 3 Dev., 353; *Roberson* v. *Wollard,* 6 Ired., 90; *Mason* v. *McCormick,* 85 N. C., 226; *Sasser* v. *Herring,* 3 Dev., 340; *Noland* v. *McCracken,* 1 Dev. & Bat., 594, cited and approved.)

EJECTMENT tried at Fall Term, 1883, of MOORE Superior Court, before *McKoy, J.*

Defendants appealed.

*Messrs. McIver & Black, Guthrie* and *Murchison,* for plaintiff.
*Messrs. John Manning* and *Hinsdale & Devereux,* for defendants.

SMITH, C. J.   The plaintiff claims the land described in his complaint under a grant from the state issued for 100 acres to Thomas Bryant on November 30th, 1820, and successive conveyances from him and others, terminating in a deed made by the sheriff of Moore in the year 1841 to the plaintiff, pursuant to a sale under execution against the heirs at law of John Ray, the last bargainee in the series.

The defendant objected to the introduction of this deed as evidence, which objection has since been waived, to the sufficiency of its description of the land and to the efficacy of the judicial proceedings which preceded and led to the sale, in divesting the estate of the intestate, John Ray, therein.

The most prominent among the exceptions to the adverse rulings of the court in reference to the action against the heirs, of whom there were two in number, all under age, to subject the descended lands to the debts of their ancestor, is to the sufficiency of the service of process upon their guardian *ad litem*, without actual service of the *scire facias* upon them.

After the repeated adjudications against the force of a similar objection to a practice which has long prevailed and upon the validity of which so many titles depend, and especially, taken by one not interested in the judgment, and in a proceeding wholly collateral, the law must be considered settled upon the point.   We are content to refer to but two cases.   *White* v. *Albertson*, 3 Dev., 241 ; *Matthews* v. *Joyce*, 85 N. C., 258.

Nor is the sheriff's sale ineffectual by reason of any of the other defects in the proceedings pointed out in the other exceptions.   Indeed they are unusually full and specific. There is a judgment against the administrator ascertaining the debt; the value of the assets in his hands and its insufficiency to discharge the judgment by more than one hundred dollars, besides costs ; the appointment of a guardian

*ad litem* to the heirs of the intestate designated by name; the award of the writ of *scire facias* against them; the service upon the guardian *ad litem;* the adjudication of sale; the issue of execution after twelve months delay, reciting the previous action of the court and directing the sheriff to sell " all lands which descended to the heirs of John Ray, deceased, situate in his county, for the residue of the debt above the value of the ascertained assets and costs, which had been adjudged to Thomas Bryant for debt and $6.05. for costs and charges in said suit expended, wherefore Majory Ann Eliza and John Alex Ray, heirs at law of John Ray, deceased, are liable as appears to us of record."

The sheriff made return to this execution and executed his deed to the plaintiff with full recitals of the action of the court and his own proceedings under the writ, conveying the tracts of land sold and describing them by metes and bounds.

We are unable to discover any defect in these proceedings, obstructing the transfer of the title to the intestate's lands which, at his death, vested in the said heirs, to the plaintiff who made the purchase.

The case of *Raiford* v. *Peden,* 10 Ired., 466, is not in conflict but rather supports this conclusion, nor are those of *Bonner* v. *Tier,* 3 Dev., 353, and *Roberson* v. *Wollard,* 6 Ired., 90, since the heirs are named in the execution.

2. The appellant's next exception is to the admission in evidence of a deed from Alexander McIntosh to George Graham, made on August 22nd, 1821, as incompetent to aid in locating the land granted in the year before to Thomas Bryant, because it is of posterior date.

This exception was sustained, the court holding that it could not be used for that purpose and so charged the jury according to the appellant's prayer.

We cannot see how an exception can lie to this ruling, made at the defendant's request and in most explicit terms.

We must assume that the jury acted in accordance with this instruction, and if it can be supposed they did not, the remedy must be sought in the application for a new trial addressed to the discretion of the presiding judge. We cannot entertain an assignment of error in that the jury may have been influenced in arriving at a verdict, by giving weight to evidence they were expressly directed not to consider, in fixing the boundaries of the Bryant grant.

But it is not so clear that the deed executed by McIntosh to Graham was not admissible to aid in fixing the beginning of the boundary of the Bryant tract which is, or is supposed to be by the calls of the grant, at "McIntosh's corner." His deed is an assertion of ownership of the land defined in it and is his declaration of the location of its lines and corners, used by a contiguous proprietor to determine the place of a corner common to both. Would not his declarations made when alive, be competent, as hearsay, not to locate his own, but the boundary of an adjacent tract that calls for and touches it? The evidence does not come from an interested party to subserve some purpose and to secure some advantage to himself, but it is a concession in disparagement of his claim to a wider boundary for his own land.

In *Mason* v. *McCormick*, 85 N. C., 226, where such declarations were received and held to be competent, it is said they are "not used to ascertain and fix the limits of the defendant's own land, but the corner of an adjoining tract, to determine its location, and the evidence is not rendered inadmissible because that corner is coincident with one of his own boundaries."

Such declaration when found in deeds, stands very much upon the footing of an oral utterance to the same effect from one who is dead. *Sasser* v. *Herring*, 3 Dev., 340, and other cases cited in the opinion.

But it is not necessary to determine the point since the

ruling was unfavorable to the plaintiff who does not complain, and the defendant cannot.

In order to cover the disputed land with an older title and displace the plaintiff's claim, the defendant exhibited a grant made on May 17th, 1795, to David Allison, and, to fix the location of the land it conveys, proved numerous delarations of old persons since deceased, as to the position of the beginning corner, and showed that its lines from that point run according to the defendant's contention would enclose the part in controversy.

A copy of the grant is not found in the transcript but it is stated that it calls for the " Lewis land," and the " Black land," both of which adjoin.

Starting at the corner understood to be designated by the evidence and marked 42 on the map, and running thence in conformity with the provisions of the grant, the surveyor says " he did not think he made any real connection with the Lewis land or the Black line called for—Lewis line at 6 and the Black corner at 11," though he did not run the lines of either of those tracts.

This dislocation of the Allison land from tracts which form part of its boundary throws some discredit upon the declarations relied on to locate its first corner ; for if it be where they place it, the survey should not avoid but come up to the lines thus called for ; and that they do not afford evidence against the correctness of the location. But to what extent this fact, assuming it to be a fact, impairs confidence in the statements of these aged men, as to the true position of the corner in space without the presence of a natural object to which they are annexed, it belongs to the jury alone to determine.

The defendant submitted several instructions to be given to the jury, of which we only notice such as were refused :

1. If the jury believe that Kenneth Black and the other aged men pointed out the corner of the Allison grant as

being at 42 or A, according to the testimony of the witness, Currie, then they must answer " yes " to the inquiry propounded in the 4th issue :—Does the Allison grant cover the land in dispute?

The instruction assumes the absolute truth of the location, if in fact the declarations were made and are correctly remembered and reported, and denies to the jury the right to judge of its credit and sufficiency to establish the position of the corner. It makes that which is evidence only, and not always most satisfactory evidence, proof of the fact which it tends to support, and not only places hearsay, words not spoken under oath, upon a higher plane than sworn testimony delivered with opportunities for cross-examination, but withholds from the jury an essential function to be exercised in the administration of justice, in passing upon the means of information, the accuracy of memory and the truthfulness of those who undertake to fix a corner in space without the sustaining presence of some natural object with which recollection may correct itself. In brief, the court is requested to tell the jury they *must accept* the location, as ascertained by these declarations and regard the declarations as entitled to absolute and unquestioning credit.

It was for the jury, not the court, to determine the value of the evidence and its force in proving the fact for which it was introduced, and there was here the repugnant fact, if the surveyor's impressions were correct, that the lines of two adjacent tracts which form part of the boundary of the Allison tract as described in the grant, are not reached by a running that makes that corner a starting point. It would have been a usurpation in the judge to deny to the jury the right to say what credit ought to be given to the declarations as tending to show its true position under the grant.

2. After verdict the defendant moved for a new trial not

only on the ground of the several overruled exceptions, set out in the record, but for the further reason because the jury's response to the issue in reference to the Allison land was against the evidence and without evidence.

We cannot precisely understand the force of this assigned ground for a *venire de novo* as a matter of right. The jury have not found any positive fact without evidence which would be an error in law. They have simply failed to find a fact upon the evidence introduced to prove it. How can the court control the jury and force them to give credit to testimony, without an invasion of their functions? The result only shows that the declarations of the old men did not satisfy them that the corner was where these old men supposed it to be. The finding belongs exclusively to the jury and no court can coerce them to find a fact upon evidence which they disbelieve, however cogent and convincing it may appear to others. *Ad questiones facti, non respondent judices; ad questiones legis, non respondent juratores*, is a maxim necessary to be maintained in judicial administration.

In *Noland* v. *McCracken*, 1 Dev. & Bat., 594, the jury had been directed in language not very unlike the proposition now maintained for the appellant, that " where a witness was heard by a jury, who was neither impeached, nor contradicted, whose story was credible, and in whose manner there was nothing to shake confidence, they were bound to believe him." This instruction was declared erroneous and GASTON, J., in his opinion says : " They (the jurors) are the competent and exclusive judges whether human testimony be inconsistent with the operation of those common principles which regulate human conduct. If thus believing, they do in their consciences actually assent to it, there is no rule of law which compels them to yield to it an official faith. While the competency of witnesses and the relevancy of testimony are made the exclusive subjects of judi-

cial cognizance, the *credit of witnesses and the sufficiency of their testimony are as exclusively matters for the determina tion of the jury.*"

This is emphatically enforced in the statute which forbids a judge to " give an opinion whether a fact is fully or sufficiently proved, such matter being the true office and province of the jury." THE CODE, § 413, and numerous references under the section.

It has been urged that there was no evidence to support the plaintiff's location of the land described in the Bryant grant.

In answer to this objection it may be said that it was not made at the trial, and the adjudications are too numerous and uniform to need repetition, that error cannot be first assigned in this court for an omission in the trying judge to give a charge when not requested to give it.

Nor is this rule of practice at all modified by that prescribed in THE CODE, § 412, Par. 3, which declares:

" If there be error either in the refusal of the judge to *grant a prayer for instructions,* or in granting a prayer, or *in his instructions generally,* the same shall be deemed excepted to without the filing of any formal objections."

It is obvious that an omission to give a charge to which a party would have been entitled will not be a reviewable error unless requested and refused.

And it is equally manifest that the expression " in his instructions generally " is meant to embrace such instructions as involve an erroneous statement of the law. When the judge undertakes to lay down the law he must lay it down correctly, that is, the legal proposition must be in itself correct.

It is becoming so common for counsel to criticise instructions, not for an inherent and apparent error, but for an alleged error in its relations to the evidence, that we deem it proper to announce that we can consider only exceptions

made in the court below, and under the statute such as are included in its terms. It would do great injustice to the judge to have his rulings revised when no exception was taken at the time, or to have reversed on appeal instructions other than such as contain an erroneous proposition of law; and beyond this in our opinion it was not the intention of the general assembly to go in putting the enactment in its present form.

Upon a calm review of the whole case we must declare there is no error in the record, and the judgment must be affirmed.

No error.                                        Affirmed.