A. J. PLEASANTS v. THE RALEIGH AND AUGUSTA AIR-LINE RAILROAD COMPANY.

*Appeal—Assignment of Error—Master and Servant—Contributory Negligence.*

1. Where no errors are assigned in the case stated on appeal, and nothing appears in the record, either in terms or by implication, which shows that the appellant was not satisfied with the judgment, it will be affirmed.

2. The Code, §412, par. 3, does not allow errors to be assigned for the first time on the hearing of the appeal.

3. By MERRIMON, J. This section of The Code (412) provides for the entries to be made on the record in the course of the trial, and motions subsequent thereto, in order that appellant may properly present his case to the appellate Court, and has no reference to the assignment of error in the Supreme Court for the first time.

4. A master is bound to furnish to his servant, tools and appliances reasonably good and proper for the work the servant is to do, and to do everything essential to the proper prosecution of the work, without exposing the servant to any unnecessary danger, but his is not a guarantor of his safety, nor is he bound to protect him against his own neglect.

5. Where a section-master on a railroad was injured by using a dump car, which it was necessary for him to use in the prosecution of his work, after he knew that it was out of order and in a dangerous condition, although he had been ordered by his superior to get another car, *It was held*, that the injury was the result of his own carelessness, and that he could not recover.

6. If, in such case, both the master and servant had known of the dangerous condition of the car, and the servant had continued to use it and been injured in consequence, he could not recover; but it would be otherwise, if the servant had reported the condition of the car to the master, and he had promised to have it repaired promptly, and the servant had used it for a reasonable time, while waiting for the repairs to be made.

7. What constitutes negligence, or contributory negligence, is a question of law to be decided by the Court, and should not be left to the jury.

(*Fry* v. *Currie*, 91 N. C., 436; *Lytle* v. *Lytle*, 94 N. C., 522; *Bost* v. *Bost*, 87 N. C., 477; *Crutchfield* v. *The Railroad*, 76 N. C., 300; *Johnston* v. *The Railroad*, 81 N. C., 458; *Herring* v. *The Railroad*, 10 Ired., 402; *Biles* v. *Holmes*, 11 Ired., 16; *Heathcock* v. *Pennington*, Ibid., 640; *Smith* v. *Railroad*, 64 N. C., 238; *Anderson* v. *Steamboat Co.*, Ibid., 399, cited and approved).

CIVIL ACTION, tried before *Clark, Judge,* and a jury, at February Term, 1886, of CHATHAM Superior Court.

There was a judgment on the verdict for the defendant, and the plaintiff appealed.

*Mr. John Manning*, for the plaintiff.
*Mr. E. C. Smith*, for the defendant.

MERRIMON, J.    In this case, what is intended to be the case stated on appeal simply states the substance of the pleadings, the issues, the evidence, the instructions of the Court to the jury, the findings upon the issues submitted to them, and the judgment.    No exceptions appear to have been taken, and no errors are assigned. There is nothing in the record that shows in terms, or by reasonable implication, that the appellant was in any respect dissatisfied with the rulings of the Court or the judgment, except the appeal.

Now, manifestly, this is not a compliance with the statute (The Code §550,) prescribing how exceptions shall be taken, and errors assigned. It provides that the appellant "shall cause to be prepared a concise statement of the case, embodying the instructions of the Judge as signed by him, if there be an exception thereto, and the requests of the counsel of the parties for instructions, if there be any exception on account of the granting or withholding thereof, and stating separately in articles numbered, the errors alleged." This provision is plain, and we have frequently said that it must at least be substantially complied with, except in certain exceptional cases. It is unnecessary to repeat or reproduce what has been so often said in this respect here. *Fry* v. *Currie*, 91 N. C., 436; *Lytle* v. *Lytle*, 94 N. C., 522; *Bost* v. *Bost*, 87 N. C., 477.

The learned counsel for the appellant contended on the argument, that he had the right by virtue of the statute (The Code, §412, par. 3), to assign errors specifically in this Court on the argument. This is a misapprehension of the meaning of the paragraph relied on, as was decided in *Lytle* v. *Lytle, supra.* Speaking for myself and not for my brethren in the comments I now make, in my judgment, all the clauses of the section last cited, have reference to, and provide for, the entries to be made on the record in the course of the trial, and the entry of judgment and motions subsequent thereto, in such way as to enable the parties to the action to appeal to this Court, if they, or any of them, should see fit to do so. This appears from its terms, and from the just and reasonable implications arising from its connection with and relation to other statutory provisions.. It is of the chapter of the Code of Civil Procedure in respect to "Trial by Jury," which chapter is of "Title 10," entitled "*Of Trial and Judgment in Civil Actions*," while the subject of appeals is regulated under a different title and by a chapter entitled "Of Appeals in Civil Actions."

The first paragraph of the section under consideration, prescribes what entries the Clerk shall make when the Court receives

the verdict of the jury. The second has reference to, and pre-
scribes how exceptions shall be taken in the course of the trial,
such as exceptions to rulings of the Court in respect to questions
of evidence and in like respects. The third, the one in question,
to *instructions to the jury;* how they shall be noted or set
down in the record. The fourth, to motions to set aside the ver-
dict and grant a new trial for the causes prescribed in it. It will
be seen, that if an exception be taken on *the trial,* it must be
reduced *to writing at the time when taken,* with so much of the
evidence as may be necessary to present it. And so, also, if the
Court shall hear a motion to set aside the verdict and grant a
new trial, and there be an appeal from the decision in that re-
spect, "a case, or exceptions, must be settled in the usual form
upon which the argument must be had." It thus appears that
there was no purpose to dispense with exceptions in these
respects.

Paragraph three in question, has reference only to *instructions*
given by the Court to the jury, first, to such as are prayed for,
which must be reduced to writing, (The Code, §415); secondly,
instructions given generally, without any prayer from a party.
If there be error in such instructions—that is, grounds of excep-
tions—they shall be deemed excepted to without "filing any
formal objections," that is, the party complaining shall have the
right, *although he did not formally except at the time the objec-
tionable instruction was given,* to assign errors in the statement of
the case on appeal, as directed by the statute, (The Code, §550),
which prescribes how the case on appeal shall be stated and set-
tled, and errors assigned. It cannot be, that as to some matters,
errors shall be assigned, and as to instructions, there should be
none! There is neither reason nor provision for such distinction.

This, it seems to me, is a just and proper interpretation of the
statute (The Code, §412, par. 3). It gives that paragraph intel-
ligent effect, and renders it consistent with other provisions of
the same section, and the statutory regulations in respect to
appeals generally. If the interpretation contended for by appel-

lant's counsel is the proper one, then the provision of the statute (The Code, §550), is useless and nugatory, although it expressly prescribes, and its purpose is to prescribe, how errors shall be assigned on appeal. Moreover, it would lead to the vicious and unjust practice of assigning errors on the argument here for the first time, without notice to the appellee, and in respect to matters, which, if excepted to in the Court below, might have been cured by amendment. This Court would be at liberty, perhaps called upon, to roam through the record, without chart or compass. This would be most unreasonable and unheard of in a Court of Errors. The statute does not so provide.

We have examined the record with care, and may add that we have not discovered error in it. The plaintiff had for many years been a section-master of the defendant on its railroad, at the time he encountered the accident by which he was injured. He used in prosecuting his business, "a dump or pole car," moved by hand, for transporting the workmen under him, tools, etc., from place to place, on such parts of the road as he was charged with.

The evidence was more or less conflicting, but plainly, there was evidence tending to prove that the plaintiff knew of the unsafe and dangerous condition of the car, for a month before the accident; that he reported its condition to the road-master over him, about ten days before the accident, who instructed him to send it to the shops to be repaired, and use another car he had in its stead; that he failed to obey this command, and continued to use the dangerous car; that the car he was instructed to use was in fairly good repair, and for several months thereafter it was used by the plaintiff's successor without accident. There was also evidence, that the plaintiff had a standing order given to him directly, and also all other section-masters, to send such cars to the shops for repairs, when they required the same, and to call on him for new ones when needed. As said above, there was evidence more or less in conflict with this, but for the present purpose, it is not necessary to state particularly what it was.

As the evidence was conflicting, the Court properly gave the jury instructions directing them to consider it in various pertinent aspects of it—some favorable to the plaintiff, others favorable to the defendant. Of the latter, the plaintiff complains, as his counsel informs us. But we see no substantial objection to them. They were clearly warranted by the evidence.

The defendant having directed that the plaintiff, as its section-master, should use a "dump car" in the prosecution of the continuous work with which he was charged, was bound to supply him with such a car, reasonably well adapted to the service to which it was to be applied, and in all respects sufficiently strong, safe and sound to answer its purpose in the ordinary course of the work to be done, without exposing the section-master and the workmen under him, to peril not ordinarily incident to such service, and likewise to keep such car in reasonable repair. The work to be done was that of the defendant, and it was reasonable and just that it should supply and do all things essential to its effective prosecution, without exposing the persons whom it employed to do it, to extraordinary and unnecessary danger, in the course of its execution. But it was not a guarantor of their safety. Nor was it bound to protect the plaintiff against his own carelessness, neglect and default. He, by the usual contract of employment, agreed to be subject to the ordinary dangers incident to the labor and business he engaged to do, but he did not agree to accept hazard beyond that.

While the defendant was thus bound, the plaintiff was not free from obligation. On the contrary, by the nature and terms of his employment, express or implied, he assumed obligations and duties corresponding with those of the defendant, to a great extent. He was bound to reasonable care and diligence in the discharge of his duties as section-master in all respects. He was bound to be prudent, careful and industrious himself, and see that others, workmen under him, were so; to take due care of the cars and all implements of labor with which he was charged —particularly for the present purpose, it was his duty to keep

the "dump car" in good and safe condition as far as he conveniently could, in the course of his business, and when it required repairs he could not make, and especially when it was dangerous to use it, to report its condition to the road-master or other proper officer of the defendant, to the end that the needed repairs might be made, and another safe and suitable car might be supplied. In the nature of such things and business, the defendant's other officers and agents could not be always or frequently present to examine the car used by the plaintiff. He was charged with it, to look after, take care of, and use it. It was a material part of his duty to know its condition, and he was bound to report it when dangerous, to the proper officer or agent; if he failed to do so he was in default. In the nature of his business he was so charged.

And if he continued to use it while it was unsafe and dangerous, and he knew the fact, he was himself careless and negligent, and thus contributed to the peril to which he was exposed. He was not bound by his duty to the defendant to so expose himself—he did so in this case, of his own neglectful will and purpose, and must justly take the consequences of his own default. This was especially so, if he reported to the road-master the dangerous condition of the car, and the latter directed him to send it to the shop for repair, and to use another that was safe and in tolerable repair, and he nevertheless continued to use the dangerous car. He thus took upon himself the whole risk of his carelessness and reckless conduct, and when at last he encountered accident and suffering, and injury resulted to him, he could not be heard to complain of the defendant. However much he may have suffered, and however great the injury he sustained, it was the result of his own neglect, not that of the defendant, and it ought not, in justice, to answer to him for his own default. Indeed, if after the plaintiff notified the defendant of the dangerous condition of the car, with full knowledge of its condition, he continued to use it, such continued use on his part, was contributory negligence, and he could not recover damages from

the defendant. A party shall not take advantage of his own negligence, and reap reward therefor.

And so also, and for the like reason, if the plaintiff and the defendant had each like knowledge of the dangerous condition of the car, and the former continued to use it, each party took the hazard, and neither could legally complain of the other. The negligence of both parties would, in that case, be the occasion of the accident.

It would be otherwise, however, if the plaintiff reported the dangerous condition of the car, and the defendant promised that repairs should be promptly made, and the plaintiff, trusting to such promise, continued to use it for a reasonable time, expecting the repairs to be made. In that case, the defendant would assume the whole risk for a time, to be determined by the circumstances of the matter; but if the plaintiff continued to use the car, indefinitely as to time, not trusting to the promise to repair, he would contribute to the peril.

The plaintiff was bound to reasonable care and diligence, whether he knew of the dangerous condition of the car or not. The law requires that all men shall do their duty in all employments and businesses, without regard to the default or neglect of others, although the manner of discharging and the nature of such duties may be modified by the default of others. *Crutchfield* v. *The Railroad*, 76 N. C., 300; *Johnston* v. *The Railroad*, 81 N. C., 458; *Railroad Co.* v. *Barber*, 5 Ohio St., 541; Whar. on Neg., §221.

The counsel for the appellant, on the argument, insisted that the Court ought to have submitted to the jury the question, "Whether or not the plaintiff used due diligence?"; or to state it more definitely and appropriately, "whether what the plaintiff did or failed to do, that was material, as shown by the evidence, constituted negligence or contributory negligence on his part."

We think the Court ought not to have submitted such a question. It is not the province of the jury to decide such questions.

In this State, what constitutes negligence or reasonable diligence, is a question of law to be decided by the Court. The facts appearing, the Court decides that there is or is not negligence, or that there was or was not due diligence. If the evidence is all to the same effect, the Court may tell the jury, that if they believe the evidence, there is or is not negligence, as the case may be. When, however, the facts are to be found by the jury from the evidence, upon proper issues submitted, the Court submits the evidence to them, with instructions that if they find from it one state of facts suggested, then there is negligence; if another, then there is no negligence; if a third, then there is negligence; if a fourth, there is none, and so on, as the case may require. It is sometimes difficult, when the evidence is voluminous and conflicting, presenting many and varied possible aspects of the facts, to apply the law satisfactorily. This is attributable to the uncertain and complicated nature of the evidence, and the Court should be careful to present the various possible aspects of it to the jury, so that injustice will not be done to either party. It is the province of the jury to find the facts from the evidence; that of the Court, to determine what is or what is not negligence upon the facts as found. What facts the evidence proves is for the jury to find; what their legal effect is, is for the Court. *Herring* v. *Railroad,* 10 Ired., 402; *Biles* v. *Holmes,* 11 Ired., 16; *Heathcock* v. *Pennington,* Ibid., 640; *Avera* v. *Sexton,* 13 Ired., 247; *Smith* v. *Railroad,* 64 N. C., 238; *Anderson* v. *Steamboat Co.,* Ibid., 399.

The instructions given were substantially correct. The plaintiff got the full benefit of the evidence favorable to him, and he has no just ground of complaint.

No error.                                              Affirmed.