## A. J. McKINNON v. JOHN H. MORRISON.

*Pleading — Counter-claim — Contracts — Torts — Warranty— Issues—Judge's Charge—Exception—Evidence—Negligence— Verdict—Judgment in Supreme Court.*

In an action to enforce a lien given to secure the purchase money due on a horse, the lienor set up a counter-claim for damages—(a) for breach of warranty ; (b) for failure to insure the life of the horse as agreed, which plaintiff moved to strike out in this Court : *Held*—

1. While in a *proper case* a motion to strike out certain parts of a pleading may be allowed in this Court, this is not such a case.

2. A counter-claim for damages either *ex delicto* or *ex contractu* may be pleaded if it " arises out of the transaction set forth in the complaint as the foundation of the plaintiff's claim." *The Code*, § 244, sub. sec. 1.

3. It is sufficient if an issue is submitted in the language of the pleading—if it is desired in another form the Court should be asked to amend the pleadings so that it may arise in the form desired.

4. It is " well settled " that a general broadside exception to the Judge's charge on the ground, either (a) that it incorrectly states a rule of law, or (b) that it is an expression of opinion upon the facts, or (c) to an *omission* to charge upon some particular aspect of the case, when no special instruction was asked for in writing, will not be entertained. The error complained of must be *specifically assigned*, either in a bill of exceptions, or, preferably, on a motion for a new trial.

5. This ruling is not in conflict with section 412, sub-sec. 3 of *The Code*, which *only provides* that the charge need not be excepted to " *at the time*," as in other exceptions, but does not relieve a party from specifically assigning error on the *appeal*.

6. Only so much of the charge as distinctly bears upon the specific exception need be sent up in the record.

7. The *refusal* or failure of the Judge to give an instruction specially *prayed in writing, and in apt time*, is " deemed excepted to."

8. Testimony that defendant informed plaintiff that the horse was *ailing*, is competent as corroborative of defendant's other testimony that plaintiff was to keep the horse insured.

9. The failure of the defendant lienor to notify plaintiff that the policy of insurance had lapsed does not affect his right to damages. The doctrine of contributory negligence has no application to contracts, but rather to torts, and is based upon grounds of public policy.

10. When a policy of insurance is no part of the *contract* entered into by the parties, but is taken out in pursuance of it, its contents, if accepted by either party, were competent evidence to corroborate or contradict the evidence as to *what was the contract*.

11. The refusal to set aside a verdict as against the weight of evidence is not reviewable.

12. Section 957 of *The Code*, requiring the Supreme Court to give such judgment as shall appear to be proper from an *inspection of the whole record*, has reference only to essential parts of the record proper, as pleadings, verdict and judgment. ·

This was a CIVIL ACTION, for the enforcement of an agricultural lien for advancements under the statute, tried before *Shepherd, J.,* at October Term, 1888, of ROBESON Superior Court, upon issues under the defendant's affidavit and notice filed with the Sheriff.

Defendant's bond, dated January 17, 1887; due October 1st, payable to plaintiff in the sum of $130; also a mortgage on the horse of same date, and an agricultural lien of same date, registered within thirty days, introduced in evidence. The agricultural lien was to secure the bond given for the horse, furnished after the execution of the lien as advancements under said lien. No other advancements furnished. Lien covers crop seized. On these points no denial.

The defence set up was that the horse's eyes were warranted and they proved defective, so much so that the horse went blind; further, that the plaintiff agreed, as a part of the terms of the sale, that he would insure the horse's life for twelve months, but failed to keep the premiums paid up; that the horse having died, the defendant found that plaintiff had permitted the policy to lapse, and defendant set up a counter-claim for the $90, amount of the policy, and, also, for damages for breach of warranty as to the soundness of horse's eyes.

J. H. Morrison, the defendant, testified : " I saw there was some defect about the horse's eyes. Plaintiff, as an inducement to the trade, agreed that he would be responsible for any failure in the eye-sight, and pay the difference in value by reason of any failure of the eye-sight. Plaintiff also, as an inducement to the sale, agreed to take out a policy of $90 on the life of the horse. I took the horse home and worked him. In about ten days the eyes of the horse became inflamed. I carried him back, and McKinnon and I did not agree to the amount to be deducted. He then asked me to take the horse back, and he would see if he could get a horse to exchange with me, but we could never agree.

" The evening before the horse died (six weeks after the trade), I told plaintiff that the horse was sick, and that we had better make some definite arrangements. (Objection to this testimony by plaintiff.)

" On Monday after the horse's death, I learned for the first time that the policy had been forfeited; horse's eyes damaged $100. I signed the application for the insurance on the horse; McRae was agent. The company (insurance) notified me before the horse died that the premium, $1.30, was due. I did not pay the premium, nor did I notify the plaintiff. I saw McKinnon several times after I received the notice from the company that the premium owed was due, but I did not ask him to pay it, nor did I tell him that I received the notice. The notice you have is not the one served on me. I don't remember saying that the policy would be forfeited. I worked the horse; drove him to Maxton several times. McKinnon was to pay the premiums. (Objection by plaintiff; overruled; exception.) I was to have nothing further to do with it after signing the application."

Col. McRae: " Defendant Morrison made the application for the insurance on the horse at the instance of McKinnon ; said plaintiff said he wanted to insure; that he was going to sell him the horse. McKinnon was to pay the premium.

(Objection by plaintiff; overruled; plaintiff excepts.) Defendant Morrison signed the application for the insurance; defendant said, 'This is all I have to do with it.' Plaintiff knew when the premium was due. When the policy came, I notified plaintiff to come and get it, and he said let it stay and he would come and get it. McKinnon knew that the premiums were to be paid quarterly. Neither plaintiff nor defendant saw the policy until after the death of the horse. Plaintiff said he was to pay the fees. (Objection by plaintiff; overruled; excepted.) A blind horse is worth half price."

Ed. McRae: "Horse was blind; was worth $25."

R. M. Field: "Horse practically blind; worth $25."

A. J. McKinnon, the plaintiff, testified: "The value of the horse, at the time of sale was $130. Defendant agreed to give me that price for the horse, and executed his note and mortgage and lien to secure it; defendant and I traded. We went to McRae to take out policy; McRae worked out the first premium and I paid it then. There was nothing said, that I heard, about who was to pay the other premiums. I got no notice from the insurance company nor defendant that the premium was due; did not know it was due; I would have paid it if I had known it was due. McRae told me policy was there; I told him to keep it; he had all my papers for safe-keeping. I examined policy after horse died, and I could not have ascertained from it when the premium would be due. I did not agree to pay any premium but the first. Before we traded, defendant doubted the horse's eyes; I said I would warrant the horse's eyes, but nothing else. I traded the defendant another horse in place of the first one, and carried him down to the defendant, and he refused to take it. The horse was damaged $30 on account of his eyes; he never went blind. Defendant drove the horse to Maxton and return the day before he died, and told me his eyes had gotten almost well.

McRae told Morrison that he would have to insure the horse, as he was the owner; that was the insurance law."

Geo. Norment: "I knew the horse well before McKinnon sold him; there was nothing the matter with his eyes."

The pleadings in the case introduced in evidence.

The policy introduced in evidence.

The plaintiff insisted that there should be an issue, "Did plaintiff agree to keep the horse insured?" Separate from the issue, "Did plaintiff agree to insure the horse for twelve months?"

The plaintiff asked the Court to instruct the jury as follows:

1. The defendant having admitted that he had notice that the premium was due before it was due, and that he did not pay the same; that he saw the plaintiff several times after he received notice, and did not inform him that he must pay premium, or that premium was due—that defendant cannot recover for insurance, as he was guilty of negligence.

2. That if plaintiff has been negligent, yet if defendant, by reasonable care and prudence, could have averted the loss, then defendant would not be entitled to damages for, or on account of, the lapse of the insurance policy.

3. That the policy, by its terms, shows that Morrison was to pay the premiums, and cannot be contradicted, and defendant is bound by it.

4. That if plaintiff could not have told from the policy when premium was due, then he would not be liable.

The other instructions asked by the plaintiff were given. In lieu of these four instructions, the Court charged the jury:

"That, if they were satisfied McKinnon agreed to insure the horse, and keep him insured for twelve months, that then they would respond to the fourth issue, Yes; otherwise, No. That, if McKinnon agreed, at the time of the trade, and it was a part thereof, that he (McKinnon) would take out and

keep up, at his expense, a policy of insurance on the life of the horse, and it was then and there agreed between him and Morrison that Morrison was to have no further connection with the insurance, but that McKinnon was to attend to it and keep it up, and that McKinnon was then and there informed by McRae, the insurance agent, when the premium was to be paid, and the policy afterwards lapsed by McKinnon's failure to pay the premium, then the amount of policy must be deducted from the value of the horse, after first deducting any depreciation on account of blindness, to the extent only of the actual value of the horse, and they would answer fifth issue, Ninety dollars."

His Honor submitted the following issues to the jury, in addition to the issues in regard to damages for breach of warranty as to the eyesight, about which no point is raised on the appeal:

1. Did the plaintiff agree to insure the life of the horse and keep the same insured for twelve months? Answer: Yes.

2. What damage has the defendant sustained by reason of the breach of this agreement? Answer: Ninety dollars.

Motion by plaintiff for new trial—

1. For refusal to submit the issue, " Did plaintiff agree to insure the horse?" disconnected with the issue, "Did he agree to keep him insured for twelve months?"

2. For refusal to give instructions asked for.

3. For error in charge as given.

4. For admission of improper testimony.

5. For expression of opinion.

6. For that the findings of the jury are inconsistent and contrary to the weight of the testimony.

Motion overruled. Judgment, and appeal by plaintiff.

*Mr. William Black*, for plaintiff.
*Mr. F. A. McNeill*, for defendant.

·CLARK, J.—after stating the facts: The plaintiff moved in this Court to strike out "that part of the answer which sets up a counter-claim for damages, this action being in contract." In a proper case, such motion here is allowable, because a counter-claim is a cross-action, and, if the Court below did not have jurisdiction, advantage can be taken of that defect in this Court. *Tucker* v. *Baker*, 86 N. C., 1; *Bryant* v. *Fisher*, 85 N. C., 69.

The plaintiff's motion is on the ground that damages, being for a tort, cannot be pleaded as a counter-claim to an action on a contract. But damages are not necessarily for a tort. There are damages *ex delicto* and damages *ex contractu* for breach of contract. The counter-claim here set up belongs to the latter class. *Froelich* v. *Southern Express Co.*, 67 N. C., 1. Were this not so, still it is properly pleaded, as it "arises out of the transaction set forth in the complaint as the foundation of the plaintiff's claim." *The Code*, sec. 244, sub-sec. 1; *Bitting* v. *Thaxton*, 72 N. C., 541. The motion to strike out the counter-claim must be denied. ·

The first exception to evidence, that defendant informed plaintiff that the horse was ailing, is without good ground. Its bearing was to corroborate defendant's other evidence, that plaintiff was to keep the horse insured, and was notice to him of the necessity of keeping the premiums paid up.

The other three exceptions to evidence were properly overruled. The first two were as to statements by witnesses that McKinnon's agreement was to pay the premium, and the last was to an admission by McKinnon to that effect. We fail to see the force of the exceptions.

The issue as to the insurance was submitted in the language of the pleadings, and was proper, unless an amendment had been asked and allowed in the discretion of the Court.

Nor do we find anything in the case which tends to sustain the exception that the Court expressed an opinion upon

the facts.   The exception made is too general to be considered. It was the duty of the appellant in his assignment of error to point out the language in the charge which he claims to be such expression of opinion.

The first and second prayers of instruction were based upon the idea that defendant was guilty of contributory negligence.   The cases cited by the learned counsel for the plaintiff, are applicable in actions of tort, where it is shown that the party injured contributed by his own wrong, or by his negligence in not using reasonable care or prudence to avert the loss.   " The rule which denies relief to a plaintiff guilty of contributory negligence, is based less upon considerations of what is just to the defendant, than upon grounds of public policy, which requires, in the interest of the whole community, that every one should take such care of himself as can reasonably be expected of him.   It is a part of the same policy which regards suicide as a crime, which punishes vagrancy and idleness, and which has led some States to deal with confirmed spendthrifts as a species of lunatics. Waste or recklessness, even in respect to one's own property, is an injury to the State, and, indeed, to the whole world. And though political economy has demonstrated the uselessness of attempting, by means of direct penal legislation, to reform such evils, it does not condemn those rules of law which, by making carelessness the means of its own punishment, teach caution, without attempting an impracticable severity."   Sherman & Redfield Negligence, sec. 42.

The doctrine of contributory negligence has no application to a case like this.   The defendant claims damages for breach of contract—not in tort.   If the contract was as alleged by defendant, then there was no obligation on him to notify plaintiff when premiums would fall due. . It did not interest the public that he should do so, and his failure to do it was not negligence.   If the contract was as

alleged by plaintiff, there was simply no breach of it by him, and defendant could not recover on his counter-claim.

The third and fourth exceptions were properly refused for the same reason. If plaintiff's version of contract was correct, then these instructions could have no application. If (as the jury found) the defendant's statement was the true one, it was the plaintiff's own fault that he took out an incorrect or incomplete policy. The policy was no part of the contract, but was an act done in pursuance of it. Its contents, if accepted by the parties, or either of them, was competent to corroborate, or contradict, the evidence as to what was the contract.

The objection that the verdict was against the weight of the testimony, was for the consideration of the Court below, and its decision is not reviewable. The jury found that the breach of warranty as to the eye-sight was $65, and by failure to insure $90, but the Court instructed the jury that both claims for damages, if allowed, could not exceed $130, the agreed value of the horse. As the Court gave defendant judgment for costs only, the plaintiff has no ground to complain that he was damaged by any apparent inconsistency in the verdict.

The only exception remaining to be passed upon is " to the charge as given."

A general exception to the charge without assigning errors specifically will not be considered in this Court. The cases to this effect are numerous: *Lytle* v. *Lytle*, 94 N. C., 522 *Williams* v. *Johnstone*, 94 N. C., 633; *Fry* v. *Currie*, 91 N. C., 436; *Bost* v. *Bost*, 87 N. C., 481; *Pleasants* v. *R. R.*, 95 N. C., 195; *State* v. *Nipper*, 95 N. C., 653; *McDonald* v. *Carson*, 94 N. C., 497; *Barber* v. *Roseboro*, 97 N. C., 192; *Boggan* v. *Horne*, 97 N. C., 268; *Sellers* v. *Sellers*, 98 N. C., 13; *Caudle* v. *Fallen*, 98 N. C., 411; *Leak* v. *Covington*, 99 N. C., 559; *Hammond* v. *Schiff*, 100 N. C., 161; *Dugger* v. *McKesson*, 100 N. C., 1; and there are others.

Sub-section 2, section 412· of· *The Code*, requires that exceptions to evidence, and other matters of objection, must be entered "*at the time*," if not, they are waived. *State* v. *Ballard*, 79 N. C., 627; *Shields* v. *Whitaker*, 82 N. C. 516; *Scott* v. *Green*, 89 N. C., 278.

Sub-section 3, of same section, modifies that rule as to exceptions to the charge. It has been construed explicitly in *Lytle* v. *Lytle*, and other cases *supra*. Instead of requiring that exceptions to the charge shall be noted "*at the time*," it provides that the charge is deemed excepted to. This avoids the unseemly spectacle of counsel interrupting the retirement of the jury, by making exceptions ·in their hearing to the charge, and replying, as it were, to the instructions of law laid down to them by the Court. At the same time, it preserves to the losing side the right to have exceptions to the charge noted when it shall become necessary. It is, none the less, the duty of counsel to make out specifically an assignment of errors in the charge when making up the case on appeal. Such is the rule observed in this Court when it is claimed that there is error in the charge given. Indeed, a better practice would be to assign·such errors on a motion for a new trial. It would be but fair to the appellant himself, as well as to the other side, to do this. It may be that, if the errors in the charge were called to the attention of the presiding Judge, he would himself award a new trial, and save parties the expense and delay of an· appeal. When the error is an *omission* to charge as to some particular aspect of the case, it cannot be assigned as error, and become the subject of review, unless an instruction was asked for, and called to the attention of the Court. *State* v. *Bailey*, 100 N. C., 528; which case cites *Simpson* v. *Blount*, 3 Dev. 34; *Brown* v. *Morris*, 4 D. & B., 429; *State* v. *O'Neal*, 7 Ired., 251; *Arey* v. *Stephenson*, 12 Ired., 34; *Hill* v. *Woodard*, 12 Ired., 293; also, to same effect are the later

cases, *Davis* v. *Council*, 92 N. C., 725; *Branton* v. *O'Briant*, 93 N. C., 99; *Fry* v. *Currie*, 91 N. C., 436; *State* v. *Debnam*, 98 N. C., 712; *Terry* v. *Railroad*, 91 N. C., 236; *Moore* v. *Parker*, 91 N. C., 275. If the prayer for instruction is asked *in writing*, and in apt time, its refusal, or a failure to charge it, is deemed excepted to.

The statute (*The Code*, § 957) requiring the Supreme Court to render such judgment, as shall appear to be proper from an *inspection of the whole record*, has reference only to the essential parts of the record, such as the pleadings, verdict, and judgment, in which, if there be error, the Court will correct it, though it be not assigned. *Thornton* v. *Brady*, 100 N. C., 38.

We have taken the trouble to cite several of the reiterated decisions of the Court, that it may be seen that the law is "well settled" in this respect.

When specific assignment of error to the charge is made, it is only necessary to state, in the case on appeal, the part of the charge excepted to, and so much more as may be necessary to its proper understanding. When there is no error assigned to the charge, or (which is the same thing) an unpointed broadside challenge to the "charge as given," it is not usually necessary that the record be cumbered with any part of the charge.

We find no error, and the judgment below must be affirmed.

                                        Affirmed.