## AUSLEY v. AMERICAN TOBACCO COMPANY.

(Filed March 4, 1902.)

1. MASTER AND SERVANT—*Negligence.*

> The evidence in this case as to failure of defendant to hurdle or box certain cog-wheels, does not show negligence *per se.*

2. MASTER AND SERVANT—*Negligence—Assumption of Risk.*

> Where an employee knows all about the machinery and its defects, if any, before entering upon the work, he assumes the risk incident thereto.

3. EVIDENCE—*Incompetent—Master and Servant—Negligence.*

> In an action for injuries caused by failure to box or hurdle a cog-wheel, a subsequent change in the location of the wheels is incompetent.

CLARK, J., dissenting.

ACTION by W. B. Ausley against the American Tobacco Company, heard by Judge *W. B. Council* and a jury, at March Term, 1901, of the Superior Court of DURHAM County. From a judgment for the defendant, the plaintiff took a nonsuit and appealed.

*Manning & Foushee,* for the plaintiff.
*P. H. C. Cabell,* and *Winston & Fuller,* for the defendant.

FURCHES, C. J.   It seems that plaintiff was in the employment of defendant, a corporation, in November or December, 1899, when he was seriously injured by the machinery in the defendant's dry-house, and brings this action for damages. It appears that there is what is called the dryer, about 18 feet wide, 7 feet high, and 120 feet long, in a large building. This dryer has a number of cross-beams on top of it, and the process of drying seems to be done by means of fans operated by machinery, consisting of shafting,

cog-wheels, belt-wheels and belting. The motive power for operating this machinery was electricity, conveyed to it from a battery across the street. The plaintiff was injured by having his pants-legs caught in the cog-wheel on top of the dryer. The cog-wheel is placed on top of the dryer, only some six or eight inches above it, and was not boxed or covered. The plaintiff, in attempting to adjust one of the belts for the purpose of starting the fan that had stopped, stumped his toe against one of the cross-beams, or in some way stumbled, lost his balance and fell, and his clothing, as described above, caught in the cog-wheel and he was injured.

The plaintiff was a machinist, knew all about this machinery, helped put it up, was then employed to operate, keep in order and run the same. The plaintiff alleges that it was negligent in defendant not to box or hurdle this cog-wheel, and that negligence was the cause of his injury.

These are substantially the facts of the case, as shown by the testimony of the plaintiff himself, and he introduced no evidence more favorable to his right to recover than his own. The defendant offered no evidence, and the Court intimating the opinion that the plaintiff could not recover, taking his evidence to be true, the plaintiff submitted to a nonsuit and appealed.

It is difficult to see the defendant's negligence, and that the negligence of the defendant was the *proximate cause* of the plaintiff's injury, if it can be held that there was negligence. It might have been safer if this cog-wheel had been hurdled, and, if it had been, it may be that the plaintiff would not have been injured. But it can hardly be negligence—negligence *per se*—in the defendant not to have hurdled such a wheel placed on top of the dryer seven feet above the floor of the building, and where no one would have anything to do with it but the machinist in charge, employed to

keep it in order and to run it. It seems to us that a man of ordinary prudence would not have done more than the defendant did. But to our minds there is another reason why the plaintiff can not recover, about which there seems to be no doubt.

The plaintiff is a machinist, was employed to assist in putting up this machinery, and did assist in putting it up—says that those engaged in putting it up did not know how to do it. And after it was put up, the defendant employed him to run and keep it in order. He knew everything about it—more, probably, than anyone else; after having this *knowledge,* he entered into this *contract* with the defendant, and, in doing so, *he assumed the risks incident to such employment.* There was no hidden or unknown defects—unknown to the plaintiff—about this machinery. This being so, he can not recover. *Crutchfield v. Railroad,* 78 N. C., 300; *Johnson v. Railroad,* 81 N. C., 458; *Cowles v. Railroad,* 84 N. C., 309, 37 Am. Rep., 620; *Hudson v. Railroad,* 104 N. C., 491; *Pleasants v. Railroad,* 95 N. C., 195; *Coley v. Railroad,* 128 N. C., 534, and S. C., on rehearing, 129 N. C., 407.

This doctrine, we think, is well settled in this State, as well as in many other jurisdictions, where there is no dispute but what the party knew all about the machinery and its defects (if any) before he contracted and entered upon his work, he assumes the risk and can not recover. In this case there is no dispute about this; the plaintiff admits that he knew all about it; and there is no evidence that the defendant was informed of any defect and promised to remedy it. Indeed, there is no evidence that the defendant knew of any defect.

The defendant not being a *railroad,* the act of 1897, Chap. 56, Private Laws, does not apply to this case.

There was one exception to the ruling of the Court upon the evidence. The plaintiff wanted to prove that the cog-wheel had been moved higher on the shafting since the injury. This evidence was objected to and ruled out by the Court. There was no error in this ruling, as it has been repeatedly so held.

As we find no error in the judgment of the Court below, it is

Affirmed.

DOUGLAS, J., concurring. I concur in the result only, because I doubt whether there was evidence of negligence to go to the jury; but I can not agree that the Court can, under any circumstances, find, or direct the jury to find, the fact of assumption of risk, which has repeatedly been held by this Court to be an affirmative defense in the nature of confession and avoidance. Neither can I fully approve of Crutchfield's case.

CLARK, J., dissenting. The plaintiff was put to work where one of his duties was to replace a belt which had been "thrown" by the band-wheel, whereby the fan was stopped. The band-wheel was on a shaft within three inches of the powerful cog-wheels which ran the machinery, and which rose eight to ten inches above the floor. These wheels were not covered or boxed, and in attempting to adjust the belt back upon the wheel, the plaintiff stumped his toe, fell, his clothing was caught in the revolving cogs, and he was injured. All of his clothing was torn off of him, and only by great presence of mind and by a providential dispensation he was saved from being literally ground up.

It was negligence to have such dangerous machinery unboxed in dangerous proximity to a band-wheel in a place where an employee might be called at any moment to replace a belt. *Res ipso loquitur.* The plaintiff was not allowed,

under the rules of law, to show that defendant has since boxed these cog-wheels, but he offered to show it, and, if defendant has not yet boxed them, its negligence is certainly very gross. It was in evidence, without objection, that since the plaintiff's injury the band-wheel has been moved upon the shafting, further away from the cog-wheels.

The Court not only erred in refusing to let this evidence go to the jury upon the issue of negligence, but should have told them that if they believed the evidence they should find that leaving unboxed cog-wheels so powerful as to do what the testimony showed that these wheels had done, was negligence.

The law was well stated by MONTGOMERY, J., at last term in *Myers v. Lumber Co.,* 129 N. C., 252, as follows: "An employer owes to his employee the duty to be reasonably careful, to provide sound and safe appliances and machinery, and also to see that the place prepared for him in which to do his work, and the ways provided for getting to and from it, be reasonably safe. *Chesson v. Lumber Co.,* 118 N. C., 59." And to that purport are the numerous and uniform decisions of this Court.

No one can read this evidence and say that the unboxed cog-wheels were safe, or that putting the plaintiff where he must put back a band on a band-wheel revolving in three inches of such uncovered cog-wheels, was providing him a safe place to work in. If the plaintiff was guilty of contributory negligence or assumption of risk, these were affirmative defenses, and the Judge could not direct the jury that there was no negligence by defendant because plaintiff had cured liability therefor by his contributory negligence or by assumption of risk.

It is not contended that there is any evidence of contributory negligence, but it is said the plaintiff knew the cog-wheels, if unboxed, were dangerous, and therefore he as-

sumed the risk. But the defendant also knew they were dangerous. Why, then, was it not the defendant who assumed the risk? The plaintiff could not box the cog-wheels, the defendant could, and therefore the defendant. not the plaintiff, assumed liability for injury resulting from failure to do so. It should be noted that the injury was not caused by the mode the cog-wheels were put up, which plaintiff aided as an employee to do, but by not having them boxed up afterwards, which was the work of a carpenter and not of a machinist.

To say that an employer is negligent if he fails to furnish safe machinery or a safe place to work in, but that though the employer is thus negligent, yet, if the employee is intelligent, the Court must hold, as a matter of law, that the employer is not negligent, and must instruct the jury to answer the issue of defendant's negligence "No," in spite of the most direct evidence of the machinery being dangerous and the place unsafe to work in—this is to contradict the very reason of the thing and all the decisions heretofore made on this subject. The decisions of the highest Court of England are uniform that mere *knowledge* on the part of the employee of the dangerous character of the machinery or of the place to work in, does not constitute "assumption of risk" by the employee. These authorities have been cited and approved by this Court in *Lloyd v. Hanes,* 126 N. C., 359 (cited by Furches, J., in *Coley v. Railroad,* 128 N. C., at page 537). In *Coley v. Railroad,* 129 N. C., 407, DOUGLAS, J., says that the employee does not "assume the risk" of dangerous machinery "unless the apparent risk is so great that its assumption would amount to a reckless indifference of probable consequences." That certainly can not be said of the plaintiff in this case.

That the machinery, unboxed, was dangerous, appears from what happened in this case, and is clear, even if no injury

had happened, for rapidly revolving cog-wheels capable of
driving such machinery would "chaw up" almost anything
not hard enough to break them.    But the plaintiff may well
have thought he could escape being caught in them, and that
was a fact for the jury, not for the Judge.    If he was caught
by his own negligence in stumbling, that was contributory
negligence, for the jury to decide, and besides there is no
evidence of such negligence by the plaintiff.    The injury
was not due to a mere accident without negligence, for if
the cog-wheels had been boxed, as they should have been, and
as the evidence shows was customary, the plaintiff could
not have been injured.

The doctrine of "assumption of risk" is clearly stated in
the English cases cited with approval in *Lloyd v. Hanes,
supra,* and by the best Courts in this country.    It is simple
and reasonable, and may be stated in a few words: An em-
ployee assumes the ordinary risks of an employment, which
is incident to it when equipped with the safest appliances in
general use in that employment, in good condition.    One
who enters the railway, electrical or mining or similar ser-
vice, knows that it is more hazardous than farming, banking,
clerking and similar employments, and he assumes the extra
risk of accidents, but he does not assume the risk of injuries
caused by negligence of the employer in failing to furnish
safe appliances, in general use.    Though the employee sees
such appliances are not there, the employer knows it too, and
the responsibility is not shifted from the employer, whose
duty it is to furnish safe appliances (as a box to cover dan-
gerous cog-wheels, or an automatic coupler, or a guard to a
mangle).    *Harden v. Railroad,* at last term, 129 N. C., 354;
*Troxler v. Railroad,* 124 N. C., 189, 44 L. R. A., 313, 70
Am. St. Rep., 580; *Greenlee v. Railroad,* 122 N. C., 977,
41 L. R. A., 399, 65 Am. St. Rep., 734; *Simms. v. Lindsay,*
122 N. C., 678.    The liability is on him whose duty it is to

furnish the safe appliances. Of course, if an appliance becomes defective without the knowledge of the employer, and the employee fails to report the defect, he assumes the risk; but if the employee reports, and the employer does not remedy the defect, the employee does not assume the risk because he does not leave. This is held expressly in *Yarmouth v. France,* 19 Q. B. D., 660, which is cited with approval by this Court in 126 N. C., at page 363.

In *Simms v. Lindsay,* 122 N. C., 678, it is said by a unanimous Court: "It is not to be held as a matter of law that operatives must decline to work at machines which may be lacking in some of the improvements or safe-guards they have seen upon other machines, under penalty of losing all claim for damages from defective machinery. It is the employer, not the employee, who should be fixed with knowledge of defective appliances and held liable for injuries resulting from their use." Such are the principles which, in accordance with rulings of other Courts of the highest reputation, we have hitherto applied uniformly to all other cases, and the same principle should be applied in this case. They are sound, just and reasonable.

In *Myers v. Lumber Co.,* at last term, cited above, it was held negligence to allow a saw to run naked near an employee passing by. Powerful cog-wheels (running at 180 revolutions a minute), when uncovered, are equally dangerous and more capable of tearing the flesh off an employee who has to work in their close vicinity to put on a belt. If these cog-wheels had been boxed (as they doubtless now are), *this injury could not have happened.* There was, therefore, evidence of negligence to go to the jury. If the plaintiff contributed to the injury, that is a matter of defense, and certainly there is no evidence of it in the record, and if there had been the Judge could not hold that it negatived and destroyed the effect of defendant's negligence.