ELIZABETH UNGER, by her guardian, etc., Appellant, *v.* THE
    FORTY-SECOND STREET AND GRAND STREET FERRY RAILROAD
    COMPANY, Respondent.

51  497
112  452

The degree of care which a person owing diligence must exercise depends
    upon the hazards and dangers he may expect to encounter and the con-
    sequences which may be expected to flow from his negligence. Such
    care only is required as a man of ordinary prudence and capacity may
    be expected to exercise in the same circumstances.
The same degree of care is not required of the carriers of passengers upon
    street cars drawn by horses as of railroad companies, whose cars are
    drawn by steam. No greater degree of care as to pedestrians in a street
    is required of a street railway company running its cars therein than is
    required of the driver or owner of any other vehicle.
In the attachment of horses to its cars it is not bound to use the best

method human skill and ingenuity have devised to prevent accidents. If it uses the method in general use, and which has been found usually adequate and safe, its duty in this respect is discharged.

(Argued October 3, 1872; decided January term, 1873.)

APPEAL from order of the General Term of the Superior Court of the city of New York, affirming an order made at Special Term setting aside a verdict in favor of the plaintiff and granting a new trial.

This action was to recover damages done to the plaintiff by a team of horses which had escaped from one of the 'defendant's cars in the city of New York, and, running away, ran over and seriously injured her. The facts appear sufficiently in the opinion.

*Samuel Hand* for the appellant. The question of negligence was one to be disposed of by the jury, and the motions for a nonsuit were properly denied. (*Ernst* v. *H. R. R. R. Co.*, 35 N. Y., 9, and cases cited; 39 N. Y., 61.) Defendant's negligence, in not ascertaining the utility of and adopting improvements to protect passengers from injuries to which cars are liable, is a question of fact. (*Hegeman* v. *West. R. R. Co.*, 3 Kern., 9; *Sharp* v. *Gray*, 9 Bing., 457.) It was defendant's duty to adopt every precaution to prevent the horses from detaching themselves from the cars, that the lives of passengers and people on the street should be protected. (*T. W. and W. R. R. Co.* v. *Apperson,* N. Y. Tr., June 27, 1870, 49 Ill., *Oldfield* v. *N. Y. and H. R. R.*, 14 N. Y., 310.)

*Moses Ely* for the respondent. There was no proof that plaintiff's injuries resulted from defendant's negligence, and the first motion for a nonsuit should have been granted. (*Terry* v. *N. Y. C. R. R. Co.*, 22 Barb., 586; *Deyo* v. *N. Y. C. R. R. Co.*, 34 N. Y., 14, 15; *Beers* v. *Woodruff*, 30 Conn., 308; *Johnson* v. *Hud. R. R. R. Co.*, 20 N. Y., 65.) While railroad companies owe passengers the utmost care and vigilance in managing their road, they owe others only the exer-

cise of ordinary care, such as a prudent man exercises about his affairs. (*C. and A. R. R.* v. *Burke*, 13 Wend., 611; *Kelsey* v. *Barney*, 2 Kern., 429; *Hegeman* v. *West. R. R.*, 3 id., 17, 19, 26.) Plaintiff was guilty of contributive negligence in failing to look before she stepped from the curb, and should have been nonsuited. (*Button* v. *Hud. R. R. R.*, 18 N. Y., 248.) It was error to receive the evidence excepted to by defendant, which was not cured by the judge's charge to disregard it. (*Penfield* v. *Carpenter*, 13 J. R., 350; *Erben* v. *Lorillard*, 19 N. Y., 299.)

Earl, C. In this case the jury rendered a verdict for the plaintiff, and the defendant, upon a case made and settled, moved for a new trial at Special Term, and the motion was granted. It may have been granted upon questions of fact. There is nothing in the record showing that it was not. Hence the proper course for us to pursue is to dismiss the appeal on the ground that it brings nothing before us which we can review, or to affirm the order on the ground that it does not appear that the court erred in granting it. (*Dickson* v. *Broadway and Seventh Ave. R. R. Co.*, 47 N. Y., 507.)

I prefer the latter course because both parties have asked us to examine and pass upon the merits of the case, and because it is quite clear that there was ample ground for granting the new trial for error of law.

In the evening of January 1, 1864, the plaintiff was passing upon one of the streets of the city of New York, and the defendant's team came dashing along, with a pole and whiffletrees attached to them, at a furious rate and ran over her. On the trial she called witnesses who saw the team run over her, and who knew the nature and extent of her injuries; but she did not call a witness who saw how the horses became detached from the car, or who knew what caused them to run away. The only witness she called upon the subject testified that he sat in the front part of the car, in the corner; that the car all at once stopped, and he looked out and saw

the horses running away; that he saw the horses had been attached to the car by a hook, standing upright, which appeared to have been broken off at some time, and that he did not see any one interfere with the horses. The witness did not testify that he was looking when the horses became detached, but that his attention was attracted by the stopping of the car, and that he then looked and saw the horses running away from the car. But this was sufficient to make out a *prima facie* case. The fact that the horses were unattended and unfastened in the street was, unexplained, evidence of negligence against the defendant. Hence, the court committed 'no error in refusing to nonsuit the plaintiff at the close of her evidence. But, after the close of her evidence, the defendant proved by two witnesses (one the driver, and the other a police officer) precisely how the horses became detached from the car, and were caused to run away. The driver stopped the car to take on some ladies; and at that time two intoxicated men came along and caught hold of the horses, and one of them struck one of the horses on the head, and the other caught hold of the reins and pulled them out of the driver's hands, and then the horses backed and got loose from the car and ran away. This is all the evidence upon the subject. There is nothing to cast suspicion or doubt upon the truthfulness of the witnesses, and we must take their evidence as true.

It thus appears that the horses got loose and ran away without any fault whatever of the driver, and I can perceive no principle upon which the defendant can be held liable. A person driving horses through a street is not bound absolutely to keep them under control. He is bound to exercise that reasonable degree of diligence and care which a man of ordinary prudence and capacity might be expected to exercise under the same circumstances.

But it is claimed on the part of the plaintiff that there was some defect in the hook by which the whiffle-trees were attached to the car. One of the plaintiff's witnesses testified that a piece of the hook appeared to have been broken off at

some time before the accident; but there was no evidence tending to show that this in any way impaired the usefulness of the hook; and it did not appear that this defect in the hook in any way contributed to the accident.

It also appeared that the whiffle-trees could have been fastened into the hook with a pin, so that they could not have slipped out unless the pin broke. But the proof showed that this hook was made and the whiffle-trees attached in the manner usual upon other roads. While it may be true that the team is more securely attached to the car by the use of the pin, that is not the only thing to be considered. Regard must be had to convenience and practicability, and to the safety of the passengers. The team should be so attached that it can be easily detached in any emergency. Hence, upon all the evidence in the case, no jury could properly determine that even the greatest degree of care would require that the pin should be used with the hook. But the learned counsel for the appellant argues that a street railway company is bound to adopt every improvement and to use every precaution for the purpose of meeting an unforeseen occurrence, and preventing injuries to travelers upon the streets as well as passengers in the cars; and he seeks to apply the same rule, as to diligence and care, which has in many cases been applied to railway companies, whose cars are drawn by steam, in the construction of their cars, with the view to the safety of passengers therein. The argument is clearly unsound. The degree of care which a person owing diligence must exercise depends upon the hazards and dangers which he may expect to encounter, and upon the consequences which may be expected to flow from his negligence. Railroad companies, whose cars are drawn by steam, at a high rate of speed, are held to the greatest skill, care and diligence in the manufacture of their cars and engines, and in the management of their roads, because of the great danger from their hazardous mode of conveyance to human life in case of any negligence. But the same degree of care and skill is not required from carriers of passengers by stage

coaches (*Hegeman* v. *Western Railroad Corporation,* 13 N. Y., 9); and, for the same reason, is not required from the carriers of passengers upon street cars drawn by horses. The degree of care required in any case must have reference to the subject-matter, and must be such only as a man of ordinary prudence and capacity may be expected to exercise in the same circumstances. In some cases this rule will require the highest degree of care, and in others much less.

But whatever degree of care may be required of street railway companies, as to the passengers which they carry, their cars are no more dangerous to pedestrians in the street than carriages, omnibuses or any other vehicles drawn by horses; and there can be no more danger from the horses attached to the street cars than from horses attached to any other vehicle; and, hence, no more care can be required of stréet railway companies in the management of their cars and horses in the street than is required of the driver or owner of any other vehicle. It would be a very hard and unwise rule which would require of the owner of every vehicle driven in the streets of a city that he use, in the construction of his carriage and in the harness of his horses, and all the means by which they are attached to the vehicle, the best methods which human skill and ingenuity have contrived and brought into use to prevent accidents to pedestrians in the streets. Such a rule has not and, probably, never will be adopted.

I hold, therefore, that the defendant was not required to adopt an unusual and perhaps untried method of attaching its horses to the cars. It discharged its duty in that respect to pedestrians who had the right to use the streets in common with it if it attached them in the way which was in general use and which had been found reasonably adequate and safe.

I am, therefore, of the opinion that the motion to nonsuit the plaintiff, at the close of all the evidence, should have been granted; and this leads to an affirmance of the order of the General Term, and judgment absolute against the plaintiff for costs.

All concur.

Order affirmed and judgment accordingly.