E. J. SELLARS, Administrator, v. THE RICHMOND & DANVILLE RAIL-ROAD COMPANY.

## *Negligence.*

1. The existence of negligence, upon a given state of facts, is generally to be ascertained and declared by the Court, but cases may·occur, where facts are so inseparably mixed in giving a complexion to the result, as to require submission to the jury.

2. Where there is a junction of two roads, one using the track of the defendant, and the defendant provided a switch at the juncture, which always kept its track open and in good condition; *It was held*, that the defendant was not required to keep a watchman or guard at the switch.

3. While the highest degree of care is required of railroads, in providing against accidents which may be foreseen, they are not required to provide against such as no reasonable degree of foresight would suppose likely to happen.

4. To render the defendant liable, the injury must be the natural and probable consequence of the negligence, such as under the circumstances, ought to have been foreseen by the wrong doer, as the natural consequence of his act.

5. Where one railroad corporation allows another to use its track by running its own trains over the consenting companies road, and thus exercising the franchise of the latter, such consenting company remains liable for the negligence of the servant of the other company, as much as it would be for that of its own.

6. This principle does not extend to cases where the cars of the other company are not rightfully on the defendant's road.

7. Where the defendant road allowed another to use its track for a short distance in getting to a station, and some cars on the road became detached from a train, and run on the defendant's road, in consequence of which an accident occurred, and the plaintiff's intestate was killed; *It was held*, that the defendant was not negligent, and the action would not lie.

(*Hardy* v. *The Railroad*, 74 N., 734; *Battle* v. *The Railroad*, 66 N. C., 343; *Doggett* v. *The Railroad*, 78 N. C., 305; *Aycock* v. *The Railroad*, 89 N. C., 321; *Warner* v. *The Railroad*, *ante*, 250, cited and approved).

CIVIL ACTION, tried before *Shipp, Judge*, and a jury, at Fall Term, 1884, of the Superior Court of MECKLENBURG county.

The plaintiff's intestate, in the service of the defendant company as fireman, on the night of December 5th, 1882, was in that capacity, on one of its trains running towards Spartanburg, in South Carolina, at a speed of twenty miles an hour, when, about a mile and a half distant from that place, it came in contact with two loaded flat cars, with such violence, as to shatter the engine, and so injure the intestate, that he died a week afterwards at his home in Charlotte. The track from this point to Spartanburg, ascends a grade of sixty or seventy feet to the mile, until reaching the depot, it finds a level of one hundred and fifty feet or more. Some two hundred yards before reaching the depot, the defendant's track is intersected by, and connected with that of the Spartanburg, Union and Columbia Railroad Company, which we shall for brevity designate by the word "Columbia," and thence to the depot, the road is used by both. At the junction, a safety switch was placed and maintained by the latter, for its own convenience, of such construction, that it never interfered with the running of the trains of the defendant, and was temporarily displaced by the Columbia company, to admit the passage of its cars on the defendant's track, when necessary. No switch tender was required for re-adjustment, and the presence of a watchman dispensed with, to prevent derailment from its displacement.

The ascent from the switch on the Columbia track towards Main street, was still steeper, and for half a mile was at a grade of about ninety feet to the mile. The switch has long been in

use, and no inconvenience has resulted to the operations of the defendant company.

The two loaded lumber cars had been brought to Spartanburg by the defendant, and there placed in charge of officers and agents of the Columbia Company, for transportation over a portion of its road, and were removed on it, some distance from the junction, so that the defendant's employès had no longer any control over them. The engineer and servants of the Columbia company, being in exclusive possession of these cars, and two others of its own, found the power of the engine insufficient to move the four cars, forming a single train, further up the steep acclivity of their road, detached the former two, and blocked their wheels to keep them stationary, until the other two cars could be drawn up. In order to exert the moving force of the engine to its fullest capacity, and make a fresh start, the slack had to be taken up by backing, in doing which the chocked cars were struck, the props behind their wheels displaced, and they commenced their downward descent towards the switch, passing which they ascended the slope of the defendant's road, until the momentum acquired being exhausted before arriving at the level of the depot, they commenced the retrograde movement which carried them by the switch, and to the place where the collision occurred.

A brakeman attached to the Columbia moving train, when he observed the retrograde motion of the blocked cars, ran "with all his might," as he expresses it, to the switch, to arrest the return of the loosed cars, but they had passed it before he got there, and were proceeding on their course.

The colliding train was due at Spartanburg at 8 P. m., and while the precise moment of striking is not stated, it would seem to have been just about the time when the lumber cars came to a stand-still. The night was so dark that an object of their size was visible to the lookout on the colliding engine, only when about one hundred feet distant. These are the material and untraversed facts developed in the testimony heard at the trial.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Mr. Platt D. Walker*, for the plaintiff.

*Messrs. R. D. Johnson, C. M. Busbee* and *F. H. Busbee* (*Messrs. D. Schenck* and *Chas. Price* were with them on the brief), for the defendant.

SMITH, C. J. (after stating the facts).   If the action had been brought against the organization to the mismanagement and inexcusable negligence of whose servants the intestate's injuries, and consequent loss of life, are directly attributable, there would be no legal defence against its successful prosecution, and the recovery of damages.   But it is a different question, when the claim is asserted against the defendant.   Its servants had no control over the cars, which had been delivered to the servants of the Columbia company, nearly an hour previous, nor could they exercise any authority over the action of the latter.   The inquiry now is, wherein is found the acts or omissions of the defendant, or its employés, out of which springs its responsibility to the plaintiff's intestate, or to the plaintiff, and how the negligence of the servants of the other company can be legally imputed to the defendant, so as to subject it to the claim for compensatory damages.

The first issue submitted to the jury was in this form : Was the death of the plaintiff's intestate caused by the negligence of the defendant ?   The response rendered being in the affirmative.

The series of instructions asked for by the defendant, present the case in its different aspects upon the evidence, underlying all of which, is the comprehensive proposition, that no negligence on the part of the defendant's servants is shown, entitling the plaintiff to the recovery of damages from it.   This requires of us to examine the directions of the Court, and the grounds upon which the jurors were authorized to act, in imputing negligence to the defendant's servants, for which their principal is liable.

42

The Court instructed the jury, that there was no negligence in the defendant, in allowing the other Company to use their switch in making connection between the roads, to facilitate the interchange of freight between them. " But," says the Judge, restating the evidence, and assuming the facts to be as stated, " it was the duty of the defendant to have a watchman at that junction, or some signal, provision, or appliance, to prevent such accidents as this, and to provide for the safety of its employés, such as the intestate, running its trains upon the main track."

The existence of negligence upon a given state of facts, is generally to be ascertained and declared by the Court, though cases may occur, in which they are so inseparably intermixed, in giving a complexion to the result, as to require a submission to the jury, and their general response, under appropriate instructions for their guidance from the Court.    When the severance is practicable, as in this case, the Judge must declare the presence or absence of negligence in the transaction, as found by the jury, and it is a reviewable error, when he makes a wrongful decision in the premises.    Now, was it the defendant's duty to have a watchman, signal provision, or appliance at the junction, to guard against such an unforeseen accident as happened on this occasion ?    It was not necessary to prevent a derailment of its own trains, for it was a self-adjusting contrivance, that kept its track always in proper position.    Its trains ran with the same safety over this, as over any other portion of its track, and the security to persons on them was in no manner jeoparded by the connection.

Was a signal at this point more needed than elsewhere?    Was it within the compass of reasonale foresight and sagacity, that such an accident from such a cause, might take place, which ought to have been provided for and guarded against?    An obstruction might be found upon any part of the road, but are watchmen to be distributed throughout its entire length, to look out for such, and give timely warning to approaching trains?   We do not think these carrier corporations are held to such measure of

responsibility, and their public usefulness would be greatly impaired if they were, while the highest degree of diligence and sagacity is expected in providing against accident which may be reasonably foreseen, in securing not only safe and substantial cars and moving force to propel them, but in preserving their road in good order, and free from apprehended dangers over which their trains are to pass.

Thus, in *Hardy* v. *Railroad*, 74 N. C., 734, when, after an unprecedented rainfall, a culvert was insufficient to let the water pass, and in consequence, an embankment ten feet high was washed away, into which a passing train plunged, and the plaintiff's intestate suffered an injury resulting in death, it was decided that there was negligence in not looking out, during the next ten hours, for injuries to the road-bed, that might have been supposed to have been caused by the storm, and repairing the break, or signaling an approaching train, and thus averting disaster; and the principle was applied to an employé of the defendant.

In *Battle* v. *Railroad*, 66 N. C., 343, two cars were left on a grade of the road, passing through the enclosed pasture lands of the owner of the mule, so insecurely fastened, that it would be easily set in motion. A calf had been before killed by a similar escape of blocked cars, which was notice to the road of the danger. The lower car became unfastened, and, running down the slope, met and killed the mule, and the company was held to be liable for the loss. In these cases, the neglect and want of care proceeded directly from the defendant's own servants, and consisted in positive acts of carelessness on their part.

The principle is thus stated, as governing the relations between a company, and one sustaining injury from the spread of fire, caused by sparks igniting a lot of cross-ties on the side of its track: "To render the defendant liable, the injury must be the natural and probable consequences of the negligence; such a consequence as, under the surrounding circumstances, might, or ought to have been foreseen by the wrong doer, as likely to result from his act." *Doggett* v. *Railroad*, 78 N. C., 305.

We have not been referred to any case in our own courts, or a well-considered adjudication elsewhere, that imposes so stringent a liability as is required to sustain the ruling now reviewed. Public policy demands the enforcement of every just obligation upon those public agents, who have in charge the property and persons of others, and we are not in the least degree disposed to relax them. But we are utterly unable, on the facts in this case, to impute pecuniary or other culpability to the defendant or its employés, in producing the disastrous results that followed the escape of cars, not in their own charge, but wholly under the control of those of another and disconnected company.

Appreciating this difficulty, the argument for the appellee, seeks to make the defendant liable for the want of care and vigilance in the servants of the other company, upon the ground of their being permitted to use the defendant's track, pursuant to the ruling in *Aycock* v. *Railroad*, 89 N. C., 321, and supporting references, found on page 330.

It is there held, upon authority and sound reason, that a company, permitting another company to use its track in running its own trains over the consenting company's road, and thus exercising the franchise of the latter, remains liable for the consequences of mismanagement, to the same extent as it would be for such mismanagement of its own servants in running its own trains.

The principle does not extend to the present case. The obstructing cars were not on the defendant's road by their consent, and their presence was an invasion of the defendant's proprietary rights. The small part of the track used by defendant's consent, from the junction to the depot, over which the descending cars passed, was not on this occasion, and lawfully, used by the defendant's permission, for the cars were running at random, under no control, and such use was never consented to; and besides, the damage was done on a part of the road which the Columbia Company had no authority or license to use, in a lawful manner even.

As we have said, a guard was not needed for any purpose of the defendant at the switch, for such a mishap could have no more been foreseen, than the intervention of a wilful and lawless act of aggression from a stranger could have been anticipated.

Would a light or signal at the place have been of any avail in averting the catastrophe more than a mile distant? Was there any delay in the effort to give information of the danger to the coming train? What then, could have been done, which was omitted, after the cars started on their mission of ruin and death, to arrest their progress, or give warning to the train, so near the depot? We are unable to see how blame for the terrible result, certainly falling upon others, can attach to the defendant.

There is error in this part of the charge as applied to the undisputed facts, as understood and declared by the Court.

We find it unnecessary to solve the interesting question of the plaintiff's right to maintain the action in this State, putting our decision upon other grounds. The subject is touched on in *Warner* v. *Railroad ante*, 250.

There must be a new trial. Let this be certified to that end.
Error.                                            Reversed.