THOMAS L. EMRY AND WIFE v. THE RALEIGH AND GASTON RAILROAD COMPANY.

*Negligence—Diligence—Instructions to Jury.*

1. What is negligence and what is reasonable diligence, are, when the facts are ascertained, questions of law to be declared by the Court. When the facts are involved in conflicting evidence, the Court should submit the testimony to the jury, with instructions that if they found a state of facts to be true, it was, in law, negligence or want of reasonable diligence, or *vice versa.*

2. In an action against a railroad company for damages from overflow of land on which plaintiff had a brick-yard, the overflow being alleged to result from the inability of the water-way under a bridge built by defendant to carry off the water at times of heavy rains, the plaintiff testified that previous to the time he placed his brick-yard at the place, the overflows did not occur every year, but did occur at an average of four years in five; the defendant asked the Court to instruct the jury that upon plaintiff's evidence he was guilty of contributory negligence, which was refused, and the Court charged the jury that if the circumstances were such that a man of ordinary prudence would have placed the brick-yard at that place, it would not be contributory negligence: *Held,* to be erroneous.

AVERY, J., dissenting.

CIVIL ACTION, tried at Fall Term, 1890, of HALIFAX Superior Court, *Whitaker, J.,* presiding.

The plaintiffs brought this action to recover damages for alleged injuries to the *feme* plaintiff's land, brick-yard and brick, situate on the same, a short distance above the place where the defendant's railroad crosses Chockeyotte Creek on an arched culvert. It is alleged that this culvert was too small to allow the water of the creek to pass freely through it in times of freshet, and that the free-flow of the water was obstructed by it, and the water became ponded and made to flow back upon plaintiff's land, whereby the injuries complained of were occasioned, etc. The answer denied most of

the material allegations of the complaint, and alleged contributory negligence on the part of the plaintiffs, in that they negligently placed their brick-yard and brick at a place where they knew, or had good reason to believe, the same would sustain injury from overflow of the stream, etc.

The pleadings raised issues of fact, and many were submitted to the jury, and among them, this one: "9. Was the plaintiff guilty of contributory negligence in putting her bricks on said land?"

On the trial, "the Court asked the witness (the husband plaintiff) to state whether or not water was backed by the culvert upon his land every year since he owned it, so as to damage his crops and brick-yard, or whether this ponding back of water was done at intervals, some years there being no ponding back of water."

"The defendant objected to this question as irrelevant. The objection was overruled, and the defendant excepted, and the witness answered, this did not occur every year, but did occur about on an average of four out of five years.

The defendant, among other special instructions, asked the Court to tell the jury, "that upon plaintiff's own evidence, they were guilty of contributory negligence."

"As to the ninth issue: 'Was the plaintiff guilty of contributory negligence in putting her bricks on said land,' the Court charged the jury, that if they should find that circumstances were such that a man of ordinary prudence would have put his bricks on the land, then the plaintiff would not be guilty of contributory negligence, but if they should find that the circumstances were such that a man of ordinary prudence would not have put his bricks on the land, then the plaintiff would be guilty of contributory negligence. To this the defendant excepted."

"As to the fourth issue. The Court charged the jury that if they should find that the water was ponded upon the brick-yard by the culvert, they would answer this issue, Yes,

unless they should also find that the rain-fall on this occasion was so extraordinary and excessive that it could not have been reasonably expected to fall, considering all the circumstances, and especially the history of the stream, would a prudent man have anticipated such a flood as caused the damage. To this the defendant excepted."

There was a verdict for the plaintiff, and judgment thereupon, from which the defendant appealed.

*Mr. R. O. Burton, Jr.,* for plaintiffs.
*Messrs. J. W. Hinsdale* and *W. H. Day,* for defendant.

MERRIMON, C. J.—after stating the case: It is not the province of the jury to ascertain and determine what is negligence, or what is reasonable diligence. It is too well settled in this State to admit of serious question, that such questions are questions of law to be decided by the Court when the pertinent facts are ascertained, or are admitted, or the evidence is to be accepted as true. When, however, the facts are to be found by the jury from conflicting evidence upon issues of fact submitted to them, as must happen perhaps in most cases, the Court should submit the evidence to them with appropriate instructions as to the varying aspects of the evidence. It should carefully instruct them that if they found one state of facts, then there is negligence; if a second, then there is no negligence; if a third, then there is or is not; if a fourth, there is or is not as the case may be, and so on, meeting every reasonable material aspect of the evidence and the facts accordingly as they may be found one way or another. This must be so, else the jury must frequently be left to decide legal questions oftentimes of great moment, and of difficult solution. It is not the province of the jury, but that of the Court, to decide all legal questions arising in the course of an action, whether in the trial of the issues of fact or otherwise, and it is the duty of

the Court, as far as practicable, never to leave the jury to guess at random as to what the law is, and as to its application. It is no doubt sometimes difficult where the evidence is voluminous and conflicting, presenting varying aspects of it, to apply the law satisfactorily. Nevertheless, it is the duty of the Court to do so as thoroughly as practicable. In such cases, he brings into use his talents, tact and great learning as a Judge.

It is not sufficient or proper to instruct the jury to consider and determine whether "a prudent man" would or would not do the matters and things in question, and to be governed by their best judgment in that respect. This would practically leave it to them to decide what did or did not constitute negligence or reasonable diligence in the case before them, whereas they should receive the law from the Court, and finding the facts, apply them to the instructions they so received, and not otherwise. The jury may not decide whether there is or is not negligence in view of the evidence and facts before them, by deciding what, in their judgment, "a prudent man" would think of the facts, and how he would probably act upon them.

The authorities which fully support what we have just said are numerous, and we cite several of them to which ready reference may be made. Whatever may be said in possible cases *obiter*, we think that not a single case decided by this Court can be found to the contrary. *Herring* v. *Railroad,* 10 Ired., 402; *Biles* v. *Holmes,* 11 Ired , 16; *Heathcock* v. *Pennington, Ibid.,* 640; *Avera* v. *Sexton,* 13 Ired., 247; *Smith* v. *Railroad,* 64 N. C., 235; *Anderson* v. *Steamboat Co., Ibid.,* 399; *Pleasants* v. *Railroad,* 95 N. C., 202; *Sellars* v. *Railroad,* 94 N. C., 654; *Aycock* v. *Railroad,* 89 N. C., 321; *Wallace* v. *Railroad,* 98 N. C , 494; *Smith* v. *Railroad,* 99 N. C., 241; and there are numerous cases to the like effect.

In this case, the defendant expressly alleged contributory negligence of the plaintiff, and an appropriate issue in this

respect was submitted to the jury. The defendant requested the Court to instruct them, " that, upon the plaintiff's own evidence, they are guilty of contributory negligence." The Court declined to give such instruction, but told the jury, referring to the ninth issue, that "if they should find that circumstances were such that a man of *ordinary prudence* would have put his bricks on the land, then the plaintiff would not be guilty of contributory negligence; but if they should find that the circumstances were such that a man of ordinary prudence would not have put his bricks on the land, then the plaintiff would be guilty of contributory negligence." In this there is error. The jury were left to decide that there was or was not negligence, accordingly as they might think " a man of ordinary prudence " might do one way or the opposite thereof in view of the facts. The evidence of the husband plaintiff was direct to the point, and the Court should have told the jury that if they believed this evidence, there was or was not contributory negligence.

It is insisted, however, that the error is harmless, because the jury found, in effect, that there was no contributory negligence, and that, in legal contemplation, there was none. We cannot concur in this view of the matter. The Court asked the plaintiff husband on the trial "whether or not the water was backed by the culvert upon his land every year since he owned it, so as to damage his crops and brick-yard, or whether the ponding back of water was done at intervals, some years there being no ponding back of water." The witness said in reply, " This did not occur every year, but did occur about an average of four years out of five years." It seems to us clear, and we cannot hesitate to decide, that no prudent business man would place and keep his brick-yard and brick-kilns at a place like that in question, where he would hazard the loss or serious injury described by the plaintiff four years out of five. No such enterprise could succeed, much less afford its owner profit,

109—38

when it so frequently and so certainly encountered· such losses. A prudent business man would establish his business elsewhere, and seek his remedy for injury to his land. The evidence tended to show that the plaintiffs had known for many years of the overflow and back-water of which they complain, but, nevertheless, they persisted in their hazardous enterprise. They, in a proper case, have their remedy against the defendant for injury to their land occasioned by its default and negligence, but they cannot be excused from contributory negligence, where they for years continued to prosecute a business—that of manufacturing brick—which they knew, or had strong reason to believe, would encounter injury. occasioned by the negligence of the defendant, of which they complain. They contributed directly to their own injury when they kept their brick-yard and kilns at a place where they knew that the business of the defendant would give rise to injury to them. The plaintiffs are entitled to their remedy for injury to their land. They may establish such lawful enterprise on their own land as they see fit, but when the defendant negligently interferes with their enterprise to their injury, they must be careful not to contribute to their own injury, else they must take the consequences of their imprudence. The negligence of the defendant cannot warrant contributory negligence of the plaintiffs. The defendant's insufficient culvert caused the flooding of the plaintiffs' land. The latter well knew of this for years; still, they put their brick-kilns where they had strong reason to believe they too would be flooded, and injured or destroyed. They thus contributed to their own injury. The injury was occasioned directly by the conjoint acts of both parties.

SHEPHERD, J. (concurring): The defendant prayed the Court to instruct the jury that upon the plaintiff's own evidence there was contributory negligence, and we have held

that the instruction should have been given.   This is suffi-
cient to dispose of the appeal, but as the case goes back for a
new trial, and the other question which has been presented
and so extensively discussed will very likely arise, it is
proper that it should now be passed upon.

No principle is more firmly established by this Court than
that negligence and ordinary care are mixed questions of
law and fact.   If the facts are undisputed, it is for the Court
to decide; if they are controverted, or if the inferences to be
drawn from them are doubtful, the jury must find such facts
or inferences and the Court must instruct them as to the law
applicable to the same.   In many of the States a contrary
view prevails, and it is held that such a " broadcast" charge
(as PEARSON, J., characterizes it in *Avera* v. *Sexton,* 13 Ired.,
247) as the general principle of " the prudent man " must be
given to the jury.   This rule is not applied alone to those
cases in which no special instructions are asked, but prevails
generally, because, with some exceptions, the standard of
duty, as embodied in such a general proposition, is to be
applied to the various phases of the evidence by the jury,
and they are thus practically, in many instances, constituted
the sole judges of what is or is not negligence and ordinary
care.   That such is not the law in North Carolina, is so mani-
fest that it is hardly necessary to cite the numerous decis-
ions of this Court in which the principle stated has been
most emphatically and unqualifiedly repudiated.

Judge BATTLE, delivering the opinion in *Brock* v. *King,*
3 Jones, 45 (after citing many decisions in which the prin-
ciple is explicitly denied), said:   "After these repeated decis-
ions, so recently made, we may well adopt the language of
the Court (RUFFIN, C. J.) in *Beale* v. *Roberson,* 7 Ired., 280,
upon an analagous subject:   'It would seem then, that mak-
ing a question on this subject, must be regarded as an
attempt to move fixed things, and cannot be successful.'"   In
support of a contrary view, we are referred by counsel to

*Farmer* v. *Railroad*, 88 N. C., 564. A perusal of that case will show that the point under consideration was not presented to the Court, but that the decision turned not upon the form of the charge, but simply upon the question whether the defendant would be liable for negligence where the plaintiff's negligence contributed to the injury, the Court holding that the defendant would be liable, notwithstanding the plaintiff's preceding negligence, if the defendant, by the exercise of proper care, could have avoided the injury. This was also held in *Gunter* v. *Wicker*, 85 N. C., 310, and it will be noted that the prayer for instructions in that case, and those given by the Court, contained no such general proposition as contended for, but were based entirely upon certain particular phases of fact which arose upon the testimony. Neither was the point decided in *Turrentine* v. *Railroad*, 92 N. C., 638. In that case the Court, in speaking of such care as a prudent man would and ought to take for his safety, was not discussing the form of the charge (for the charge and instructions do not appear in the case), but only "the counterpart of the rule, as declared in *Gunter* v. *Railroad*, *supra;* *Owens* v. *Railroad*, 88 N. C., 502; *Farmer* v. *Railroad*, *supra;* *Aycock* v. *Railroad*, 89 N. C., 321."

In *Troy* v. *Railroad*, 99 N. C., 298, the exceptions involving the question we are considering were not pressed, and were, therefore, not discussed by the Court. Neither is the question raised in *McAdoo* v. *Railroad*, 105 N. C., 140, and *Deans* v. *Railroad*, 107 N. C., 689.

There are many cases like the foregoing in which the Court, in passing upon instructions to juries, speaks of the rule of the prudent man as a standard of duty whereby negligence and ordinary care are to be measured and determined. It is necessary in expressing its opinion in such, and indeed in nearly all cases that it should revert to general principles of law, but it is difficult to understand how, in doing this, they are to be considered as authorizing such

general principles to be charged to the jury.  An example may be found in *Avera* v. *Sexton, supra,* where RUFFIN, C. J., states the general rule of the prudent man, and applies it for the guidance of the Court to the facts, but expressly declares that such a rule should not be submitted to the jury.

It will be seen, therefore, that no decision of this Court has been produced in which the point has been expressly decided in support of the position contended for.  On the other hand we have a long and unbroken line of decisions in which the very question was presented and decided to the contrary.

In *Biles* v. *Holmes,* 11 Ired., 16, the plaintiff sued for damages by reason of injuries to a slave, resulting from negligence or a want of ordinary care by the defendant.  There was no prayer for special instructions, and the Court charged the rule of the prudent man.  PEARSON, J., delivering the opinion, said: "What amounts to ordinary care is a question for the Court.  The Judge below erred in leaving it to the jury.  Whether the proof establishes particular facts is for the jury, but what is the legal effect of these facts, supposing them to exist, is for the Court.  Accordingly, it is settled that ordinary care, reasonable time and probable cause, the facts being admitted or proved, are questions of law. *Herring* v. *Railroad,* 10 Ired., 402; *Swaim* v. *Stafford,* 3 Ired., 286.  If these were not questions of law, no rule would ever be established, and the legal effect of certain facts, like their existence, would in all cases depend upon the finding of a jury, with no mode of having its correctness judged by a higher tribunal." Here we have a case in which the question was directly presented, and the principle of the decision has been repeatedly recognized in a number of cases.  In *Heathcock* v. *Pennington,* 11 Ired., 640, the action was also for injuries to a slave by reason of the negligence of the defendant.  No special instructions were asked, and the Court left the question of ordinary care to the jury.  The Court said (RUFFIN, C. J.) that it is "erroneous to leave the question of

due care to the jury, since it is the province and *duty* of the Court to advise them on that point, *supposing them to be satisfied of certain facts.*" For this position *Biles* v. *Holmes* is cited, and the Court said that "the judgment would be reversed if the verdict did not appear to be what it ought to have been if the Court had given the proper direction." In *Hathaway* v. *Hinton,* 1 Jones, 243, the plaintiff sued an overseer of the public road for special damages for injuries arising by reason of the defendant's failure to keep the road in proper repair. No special instructions seem to have been asked, and the Court charged the rule of the prudent man. The Court (BATTLE, J.) said "there can be no doubt the Judge ought to have decided the question himself, as has often been ruled by this Court," and a new trial was granted. To the same effect is *Glenn* v. *Railroad,* 63 N. C., 510. These cases are clearly in point, and are cited with approval in *Brock* v. *King, supra; Pleasants* v. *Railroad,* and many other decisions. Indeed, this Court has gone so far as to hold that, even in the absence of a prayer for special instructions, the Court cannot leave the question of reasonable skill and due care in a physician to the jury. *Woodard* v. *Hancock,* 7 Jones, 384. The Court said "a division of the question in such cases, between the Court and jury, is now considered settled, and, therefore, where there is a state of facts conceded or proved, it becomes the duty of the Court to draw the conclusion as matter of law. *If there be a conflict of testimony presenting different views of the case, it is in like manner the Court's duty, upon these views, to draw the proper conclusions.*" In *Smith* v. *Railroad,* 64 N. C, 235, the Court said (READE, J.) that " where the facts are agreed upon, or otherwise appear, what is ordinary care is a question for the Court; where the facts are in dispute, the proper course for the Judge is to explain what would be ordinary care under certain hypotheses as to facts, and leave the jury to apply the law to the facts as they find them." In a case between these very parties, in 105

N. C., 48, this Court took occasion to declare that charging the rule of the prudent man "is not consistent with the decisions of the Court on that subject."

From these and other cases that might be cited, it must be regarded as absolutely settled by a long line of judicial decisions, that such a general charge is not permissible in North Carolina. Whatever may be the decisions in other States, and whatever the text-books may say upon the subject (and some of these amount to but little more than a collection of such decisions), we cannot see how (even if persuaded that our rule should be relaxed in some instances) we can reverse what has long been regarded as settled law in this State. It would, indeed, seem like "an attempt to move fixed things"; and we think that if any change is desirable, it should be made by the Legislature, " for it is an established rule," says Blackstone (1 vol., 70), " to abide by former precedents where the same points come again in litigation, as well to keep the scales of justice even and steady and not liable to waver with every new Judge's opinion." *Stare decisis et non quieta movere.* It is true that precedents may not be followed when " flatly unreasonable or unjust," but we can see no reason for reversing the uniform decisions of this Court, extending through a period when it was adorned by some of the greatest jurists in this country, simply because these views are not in accord with a number of decisions from other States, which decisions, in many instances, are not even consistent with each other.

We do not feel that we are imposing any additional burdens upon the Judges by adhering to the principle as established in this State, and when it is said that the Judge is to charge the jury as to the various phases arising upon the testimony, I do not understand that the Court is prescribing any rule which at all differs from that laid down in *McKinnon* v. *Morrison,* 104 N. C., 354; *Boon* v. *Murphy,* 108 N. C., 187, and other cases.

A mere omission to charge as to a particular aspect of the testimony when not specially requested so to do, is no more ground for a new trial in cases of this character than in others. Where, however, there is a total failure to charge the law, or where a proposition of law is submitted to the jury, and is not corrected by the verdict, it is ground for a new trial.

Believing that the entire current of judicial decision in this State is in favor of the principle as declared in *Biles* v. *Holmes, supra,* I cannot concur in any view, however plausible or ingenious it may be, which looks to such a radical change in our law.

As I have remarked, if the law, as established, is to be abrogated or modified, the Legislature, and not the Court, should take the responsibility; and certainly should this be so when we are asked by counsel to reverse our own decisions upon the authorities from other States. If such force is to be given to the decisions of foreign Courts, we may at once abandon all hope of having anything settled as law in North Carolina.

I am authorized to say that the Chief Justice concurs in this opinion.

DAVIS and CLARK, JJ., concur in the above opinion.

AVERY, J. (dissenting): I do not concur with my brethren, especially in the sweeping and unqualified rule laid down in the opinion, that it is error in any and every conceivable case, on the part of a *nisi prius* Judge to define ordinary care as that which would have been exercised by an ideal prudent man, acting in the conduct of his own affairs, in the place of the person or corporation charged with negligence, and to leave the jury to determine whether, under all the surrounding circumstances disclosed by the evidence, such person attained to the standard of due care furnished by the definition. It is universally conceded that where the facts are undisputed,

and but a single inference can be drawn from them, the question of culpable negligence is one addressed exclusively to the Court. On the other hand, it is equally well established that where the testimony is conflicting in material aspects, or where fair minds may deduce more than one conclusion from an admitted state of facts, it is the province of the jury to pass upon an issue or issues involving the alleged negligence, and the duty of the Court upon request of counsel, preferred in apt time, to instruct the jury, whether, upon any given hypothesis arising out of any phase of the evidence, the alleged negligence would be shown to be the proximate cause of the injury.

But I do not concur with the Court in the opinion that where counsel ask for no instruction, even though "the evidence is voluminous and conflicting," and presents many varying aspects, it is the duty of the trial Judge to apply the law to every phase of the testimony "as thoroughly as practicable" (or as it can be done).

If the action had been brought to enforce a contract set out in a complaint, and various witnesses had contradicted each other as to many facts and circumstances tending to show on the one hand that the defendant did, and on the other that he did not, assent to such agreement, in the absence of any special requests from counsel it would not have been error to tell the jury that a contract was an agreement upon a sufficient consideration to do or not to do a particular thing; that an agreement involved the consent of two minds, and it was the province of the jury, looking at all of the testimony to determine whether the defendant assented to the agreement declared upon as the basis of the action. If such charge had been excepted to upon the ground that, in some particular aspect of the evidence not mentioned by the Court, there was in law no assent on the part of the defendant to the agreement, a fatal objection to the sufficiency of his exception would have been found in the principle stated

for the Court by the present Chief Justice in *Morgan* v. *Lewis*, 95 N. C., 296, that " the Court is not required to present possible aspects of the facts in their bearing on an issue, certainly not when they are not requested to do so;" or the still more explicit statement of the rule by the same learned Justice in *Brown* v. *Calloway*, 90 N. C , 119, that "if the Court fails to charge the jury *specially upon a point, when there are more* than one presented by the evidence, *this is. not error, unless it was requested to give the charge.*"

In the leading case of *McKinnon* v. *Morrison*, 104 N. C., 363, Justice CLARK, for the Court, said : " When the error is an *omission to charge as to some particular aspect of the case*, it cannot be assigned as error and become the subject of review, unless an instruction was asked for and called to the attention of the Court." Cited in *Taylor* v. *Plummer*, 105 N. C., 58 ; *Helms* v. *Green, Ibid*, 265 ; *McFarland* v. *Improvement Co.*, 107 N. C., 369 ; *State* v. *Fleming, Ibid*, 909. The language of Chief Justice SMITH, delivering the opinion of the Court in *State* v. *Bailey*, 100 N. C., 334, is, that error could not be assigned and become the subject of review in an omission or neglect to give a specific instruction, even when proper in itself, unless asked and thus called to the attention of the Judge in order that he may rule thereon." Judge GASTON, in *Brown* v. *Morris*, 4 Dev. & Bat., 430, cited in all of the later cases, stated the same principle still more tersely when he said " a refusal (to charge upon a particular aspect) may constitute error, but mere omission does not." In *Terry* v. *Railroad*, 91 N. C., 243, Justice ASHE, in construing § 412 (3) of *The Code*, said : " But it by no means dispenses with the rule that instructions must be asked upon points omitted by the Court in the charge, and it is no error to omit these unless asked to charge upon them." Justice CLARK, in *Boon* v. *Murphy*, 108 N. C., 187, said : " To permit a party to ask for a new trial * * * for an omission to charge in every possible aspect of the case, would tend not so much

to make a trial a full and fair determination of the controversy, as a contest of ingenuity between counsel." The effect of making actions involving a question of negligence exceptions to the rule applicable in all other cases, would be to subject the tact and learning of the Judge to the most trying tension in this particular class of trials, leaving counsel to rest upon their oars till after verdict, and then tax their ingenuity to point out as error any conceivable aspect of the evidence in which it would have been practicable to present another principle of law applicable to a particular phase of the testimony which the Court omitted to mention. To require our Judges to give in every case, where the evidence is voluminous and conflicting, as thorough and exhaustive a statement of every combination of circumstances growing out of it, together with explicit instructions as to the law of negligence applicable to every such phase, would be to subject them to a burden never before, in my judgment, imposed upon a *nisi prius* Judge by any statute or rule of practice.

It will be conceded that the question, whether an undisputed state of facts, from which only a single inference can be drawn, is sufficient in law to show that a homicide was excusable on the ground that it was committed in self-defence is one for the Court exclusively; yet it does not follow that it is error where the testimony is conflicting, or the possible inferences deducible from it are numerous, to leave the jury to determine whether a man of ordinary courage, standing in the position of the prisoner, had reasonable ground to apprehend great bodily harm at the hands of the deceased, and whether he inflicted the injury in order to protect himself from such bodily harm, without giving in detail every conceivable combination of circumstances growing out of the testimony, even where counsel fail to request more specific instructions.

If the criterion of the prudent man is as well established as a test of negligence as that of the man of ordinary courage is of self-defence in homicide, as I propose presently to show, it will be impossible, it seems to me, to offer any satisfactory reason why this Court should depart from principle in holding that a jury are never deemed in law capable of determining what is an exercise of ordinary care, where only a question of liability for damages is involved, while it is their province, where the facts are in doubt, in all cases to decide what would be the conduct of a man of ordinary courage, though a death of infamy upon the gallows may follow from their finding. I think, therefore, that the sweeping rule laid down by the Court not only leads to a radical change in the rules of practice, but to a departure from a principle established by the current of authority in our own as well as other Courts, and clearly founded upon reason.

Ordinary care is defined to be such care as men of ordinary prudence, sense and discretion usually exercise under the same circumstances in the conduct of their own business or affairs. *Shaw* v. *Railroad*, 8 Gray, 45; 2 Woods on Railroads, § 301. The degree of care depends upon the hazards and dangers incident to the business in which it is to be exercised, and consequently greater care and skill are required of railroad companies than of carriers transporting goods by coaches, wagons or street-cars drawn by horses. *Wagner* v. *Railroad*, 51 N. Y., 497. " The degree of care required in any case must have reference to the subject-matter, and must be such only as a man of ordinary prudence and capacity may be expected to exercise under the same circumstances." *Ibid.* Mr. Wood, section 302, says: " It may be well to say here that the various expressions found in cases as to the degree of care to be observed by a railway company, in reference to the condition of its road-way, bridges, carriages, engines, etc., after all resolve themselves into the simple rule that it must use reasonable care, and that the degree of care to be exer-

cised must be commensurate with the nature of the business
and the possible dangerous consequences to the lives and
limbs of passengers if it is remiss in the performance of this
duty, and the question whether it has exercised such care or
not is for the jury." *McIntyre* v. *R. R.*, 47 Barb., 523    Judge
CAMPBELL, in *Railroad* v. *Huntley*, 38 Mich., 537, stated the
rule to be, that "if they (railroad companies) exercise their
functions in the same way with prudent railway companies
generally, and furnish their road and run it in the custom-
ary manner which is generally found and believed to be
safe and prudent, they do all that is incumbent upon them."
"This practically means (says Mr. Wood, 1089) that if the
company exercise such care and vigilance as a prudent man
under like circumstances would exercise, it has discharged
its duty, otherwise it would be meaningless and would *call
upon the jury* to say *what railroad companies* were prudently
managed and what were not."

In the last edition of Sackett's Instruction to Juries, 347,
the following formula in reference to an issue of negligence
is approved : "You are instructed that in determining the
question of negligence in this case, you should take into
consideration the situation and conduct of both parties at
the time of the alleged injury as disclosed by the evidence,
and if you believe from the evidence that the injury com-
plained of was caused by the negligence of the defendant's
servants, as charged in the declaration, and without any
greater want of care and skill on the part of the plaintiff
*than was reasonably to be expected from a person of ordinary care,
prudence and skill, in the situation in which he found himself
placed,* then the plaintiff is entitled to recover."

To sustain this rule the author cites Cooley on Torts, § 674;
Wharton on Negligence, § 304; *Keokuk Railroad* v. *True*, 88
Ill., 608; *Brown* v. *Railroad*, 50 Mo , 461; *Cooper* v. *Railroad*,
44 Iowa, 134.   A comparison of the language cited, with the
instruction given in the Court below and excepted to by

defendant, will show that it was substantially the same as that set forth by Sackett as a formula.

The principle, as stated by Judge COOLEY in his work on Torts, 630, sustains the same view. He says: "All these circumstances are to be taken into account when the question involved is one of negligence, for negligence in a legal sense is no more nor less than this: the failure to observe, for the protection of the interest of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." The same author says, at page 668: "The question (for the jury) will often be, *does the defendant appear to have ·exercised the degree of care which a reasonable man would be expected to exercise under like circumstances?*" and at page 675 cites *Tuff* v. *Warmon*, 5 C. B. (N. S.), 585, in which a similar rule is laid down. The rule, as stated in 1 Shearman & Redfield, § 53, is still more explicit: "In very many cases the law gives no better definition of negligence than the want of *such care as men of ordinary prudence or good men of business would use under similar circumstances.* Of course this raises a *question of fact as to what men of this character usually do under the same circumstances. This is a point upon which a jury have a right to pass,* even though no evidence of usage were given, for they may *properly determine the question by referring to their own experience and information* Indeed they must do so, since express evidence on such points is usually not admissible. Consequently a case of this kind must *be left to the jury,* even if there is no conflict of evidence, *unless indeed there is evidence enough to decide this point, as well as all other questions in the cause."*

Beach, in his work on Contributory Negligence, page 23, says: "Ordinary care is generally, therefore, a question of fact. * * * The law prescribes as a standard of conduct, to which all men must conform at their peril, *the conduct of an ideal average prudent man,* whose *equivalent for practical purposes*

*the jury is generally taken to be, and whose culpability or inno-cence is the supposed test.* * * * Specific rules for specific cases are taking the place of the general rule that one must use ordinary care and prudence; but *whenever no such rules have been* laid down we *revert* to the original theory, and decide the case upon the only remaining rational principle, that *ordinary care is to be held to mean that measure of prudence and carefulness that the average prudent man might be expected under the circumstances to exercise."*

"The law considers," says Justice OLIVER WENDELL HOLMES, Jr., "what would be blame-worthy in the average man, the man of ordinary intelligence and prudence, *and determines liability by that."* The Com. Law, page 108.

I may add to these citations from well known text-writers, many leading cases decided by the Courts of England, and most of the Courts of our States, that are referred to by the authors to sustain their views; but will add only a few references. *Railroad* v. *Beatty,* 73 Texas, 592; *Hoffman* v. *Water Co.,* 10 Cal., 413; *Wolf* v. *Water Co,* Id., 541; 16 Am. & Eng. Ency., p. 402; *Reynold* v. *Burlington,* 52 Vt., 300; *Railroad* v. *Gower,* 85 Tenn., 465; 4 Am. & Eng. Ency., p. 22.

I do not admit that this consensus of authority can be successfully met and overcome by the assumption that this Court has fallen into a particular groove from which it cannot be extricated except by such legislative action as will place us in line with most of the Courts of the States, as well as the Courts of England. On the contrary, I maintain that, though there is some conflict among the older decisions as to the rule governing actions brought to recover for negligence, all of the leading cases, decided for twenty years, where the question was even indirectly raised, have been in accord with the principle that where the evidence is conflicting and voluminous, and no instructions are asked, the Court may fall back upon the original rule, as stated by Beach, and let the jury put themselves in the place of the average pru-

dent man, as they would on a trial for murder be instructed to look at the testimony from the standpoint of an ideal man of ordinary courage situated as the prisoner was when the killing was done.

It is true that there are *dicta* in three or four cases in which the abstract proposition is stated that the rule of the prudent man is not to be submitted as a guide to the jury, but these *obiter* statements are in conflict with principles which underlie numberless decisions of this Court, unless explained by the fact that, in those particular cases, instructions were asked or the facts were undisputed. In *Farmer* v. *Railroad*, 88 N. C., at page 567, it appears that the plaintiff requested the following instructions: "If the plaintiff was guilty of negligence in turning his mule out, yet if the defendant by the exercise of proper care could have avoided the injury, the plaintiff is entitled to recover." The appeal was in part from the refusal to give this instruction, which was held to be error. Justice Ashe, delivering the opinion of the Court, said: "But conceding that negligence was imputable to the plaintiff in turning his mule out of his lot, as described by the witnesses, still it was the duty of defendant to exercise proper care to avoid the injury, for it has been held by this Court that, "notwithstanding the previous negligence of the plaintiff, if, at the time when the injury was committed, it might have been avoided by the exercise of reasonable care and prudence on the part of defendant, an action will lie for damages. *Gunter* v. *Wicker*, 85 N. C., 310. * * * * The *instruction asked by the plaintiff and refused by the Court was almost in the identical language of this decision*, and when the Court *declined* to give it, the *jury may possibly have been misled by the inference reasonably to be drawn from the refusal.*" In that case it was declared to be error to refuse to allow the jury to pass upon the question whether, by the exercise of ordinary care (or that which a prudent man would have exercised under similar circumstances), the defendant could

have avoided the injury. This was 'not said *obiter*, but bore directly on the point raised. In our case it is held to have been error to allow the jury to pass upon the question whether a man of ordinary prudence would, under the circumstances, have put his brick upon the land where the *feme* plaintiff's brick were destroyed, because "the jury were left to decide that there was or not negligence, according as they might think a man of ordinary prudence might do, one way or the opposite thereof, in view of the facts." If the question whether the defendant, in the one case, could, by exercising the care which a prudent man occupying its place would have exhibited, might have avoided an injury, was one of fact for the jury, it is difficult to distinguish the question of plaintiff's negligence from that of a defendant, and determine upon what principle it falls peculiarly within the province of the Court to refuse any such test as applicable to contributory negligence only. If such is the standard or criterion by which a jury may determine whether a defendant railway company has exercised ordinary care, why may not the same test be applied by the jury to the question whether an injury is due to the concurrent negligence of a plaintiff? Yet, as we will see, the case of *Farmer* v. *Railroad, supra,* does not stand alone in support of the right of the jury upon the point mentioned by Justice ASHE, if the negligence of both parties must be passed upon under the same general rule.

In *Owens* v. *Railroad,* 88 N. C., 507, Chief Justice SMITH, delivering the opinion of the Court, said: "The rule of liability has its modifications, even where there is mutual negligence, for if the plaintiff was negligent, and the defendant by the use of ordinary care could have avoided doing the injury, he will nevertheless be subject to the action; and so, if the defendant was negligent, and the plaintiff by the use of ordinary care could have escaped the injury, the latter is not entitled to recover. * * *. The question was simply

as to the character or quality of the intestate's own act, as determined by the attending circumstances, and, as there is no presumption when all the facts are disclosed that proper care was used, so there is none that it was wanting, and the transaction should have been committed to the jury to find how the fact was. * * * The jury should be left free to determine the essential fact on which the defendant's liability depends." The *essential question was previously declared to be, whether the intestate " was watchful and used due care "* (such as a prudent man would have exercised), "and the collision could not have been prevented by the use of such appliances as were at command."

Where the question of liability on the part of a railway company for negligently killing cattle has arisen, this Court has uniformly held that it was the province of the jury, in cases where the evidence was conflicting, or fair minds might deduce more than one inference from it, to determine *whether the locomotive engineer could, by keeping a proper outlook, or by proper watchfulness, or by the exercise of ordinary care,* have discovered that the cattle were on the track in time to avert the danger by using the appliances at his command—ordinary care being, according to all the authorities, synonymous with that which an ideal prudent man would have exhibited under similar circumstances.

In *Turrentine* v. *Railroad* 92 N. C., 641, Chief Justice SMITH, for the Court, said: " *The question for the jury,* in the words of an eminent English Judge, is ' whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own *negligence or want of ordinary and common care and caution,* that but for such negligence and want of ordinary care and caution on his part, the misfortune would not have happened. In the first case the plaintiff would be entitled to recover, in the latter not, as but for his own fault, the misfortune would not have hap-

pened,'" etc. A new trial was awarded in that case, because the jury had not found whether the plaintiff had exercised ordinary care, as it was their province to do, yet if ordinary care is that usually exercised by the prudent man similarly situated, how can a Court possibly avoid leaving a jury to test the question of care by the standard laid down by every text-writer?

Suppose that a trial Judge tells a jury, as he unquestionably must often instruct them, that the liability of a railway company depends upon the question to be decided by them on the evidence, whether the engineer could, by the exercise of ordinary care, notwithstanding any negligence on the part of the plaintiff, have avoided killing cattle or inflicting an injury on a person, and the jury should return for special instruction as to what is meant by *ordinary care.* The Judge must respond that it is such care as the average prudent man would exhibit under like circumstances, because the law furnishes no other reply for him. Thus it is that practically the rule of the prudent man is always passed upon in both classes of cases mentioned. The jury are left to determine, in actions for waste and against bailors, whether a prudent owner in *fee* would have cleared land under similar circumstances. *Shine* v. *Wilcox*, 1 Dev. & Bat. Eq., 631; *Sherrill* v. *Connor*, 107 N. C., 630; *Morris* v. *Cass*, 10 Kansas, 288. Does reason or public policy forbid the adoption of a similar rule in trying issues of negligence?

The principle established in *Gunter* v. *Wicker, supra,* that the liability of a party often depends upon the question to be decided by the jury, whether a defendant, by the exercise of ordinary care (or that which characterizes the ideal prudent man), is also approved in *Deans* v. *Railroad*, 107 N. C., 686; *McAdoo* v. *Railroad*, 105 N. C., 140; *Lay* v. *Railroad*, 106 N. C., 410, and numerous other cases. I do not concur with the Court in the view that in all the cases where this question has been decided by the jury, they have usurped the

functions of the Court and passed upon an issue of law by determining what constitued negligence. When the facts are undisputed, and but a single inference can be drawn from them, it is the duty of the Court to instruct the jury whether, if the evidence is believed, the defendant was justifiable or excusable in beating or killing his adversary; but it has never been insisted on that account that where the testimony was conflicting, the application by the jury of the test question, whether a man of ordinary firmness or courage would have deemed it necessary to strike the blow if similarly situated, necessarily involved the assumption by the jury of the right to say what did or did not constitute self-defence as a question of law. It seems to me that reason, authority and public policy combine to deter us from adopting a peculiar principle, and an anomalous rule of practice in actions involving the law of negligence, when there is no sufficient reason for distinguishing such cases, and when, with the increasing number and growing business of railway companies, these peculiar and complex rules must be so often applied. I assume that the Court does not intend to overrule the whole line of cases in which it is held not to be error to omit to give instructions not asked, and that, therefore, the rule laid down in this case, that it is the duty of the Court to apply the law as far as practicable to every aspect of the evidence, whether in response to or in the absence of requests, and that it is error to omit to state any practicable view of the law applicable to the testimony, is not a general one, but applies only where an issue of negligence is involved.

Of the cases cited from our own reports, and relied upon to sustain the doctrine laid down by the Court, it appears upon examination of them, that either upon an undisputed state of facts or upon the most favorable view of the evidence, or "supposing all the evidence to be true, the Court held that there was or was not negligence in the following, to-wit, *Herring* v. *Railroad*, 10 Ired., 402; *Avera* v. *Sexton*, 13

Ired., 247; *Heathcock* v. *Pennington,,* 11 Ired., 642; *Smith* v. *Railroad,* 99 N. C., 241; *Smith* v. *Railroad,* 64 N. C., 236; *Anderson* v. *Steamboat Co., Ibid,* 399; *Sellars* v. *Railroad,* 94 N. C., 654. The material facts seem to have been admitted in *Biles* v. *Holmes,* 11 Ired., 16. On the other hand, the exception passed upon was to the refusal to give either instruction on a particular phase of the evidence, or the general instruction that negligence either was or was not proved in any view of the testimony in *Aycock* v. *Railroad,* 89 N. C., 324; *Wallace* v. *Railroad,* 98 N. C., 494, as well as in *Avera* v. *Sexton,* and others of the cases already distinguished.

In *Pleasants* v. *Railroad,* 95 N. C.. 195, this Court expressly declared that no exception had been taken below that could be entertained on appeal, and of course all that was said in the unnecessary discussion of points raised for the first time in the appellate Court was *obiter,* and is not binding as authority. *Perry* v. *Scott* (decided at this term). The abstract statements in *Heathcock* v. *Pennington* and in *Biles* v. *Holmes, supra,* are not to be treated as authoritative, because both cases were decided upon the undisputed testimony, but are to be considered as qualified by the peculiar character of the evidence. It will not be contended that in a case where prayers for instruction were preferred, or where the facts were undisputed, or the material facts were not controverted, the question was fairly raised whether, in the absence of any specific requests for instruction and upon voluminous and. complicated evidence, giving rise in its varying aspects to different legal conclusions, the trial Judge was bound to work out every reasonable hypothesis arising out of perhaps almost endless combinations of parts of the testimony, and present the law applicable to every such phase. If it is not practicable to pass upon every possible combination of conflicting testimony, by what rule are we to define the limit to which it is practicable to work out these intricate problems? What rule shall we offer to the

diligent *nisi prius* Judges as an infallible guide in conducting such trials? They know that omissions to give charges upon the trial of all actions not involving a question of negligence are not subject to exception, but the boundary line of error must necessarily cover every conceivable omission where such a question is raised, under the law, as established in the case at bar, and the rule will therefore impose upon them unusual and, I think, unnecessary burdens.

I regret all the more that the necessity arose for differing with the Court, because the case might have been disposed of upon the other ground, in which a majority have concurred, that, in the most favorable view of the evidence the loss was directly due to the plaintiff's negligence in placing his brick in an exposed place. While, however, it was not essential, it was the right of the Court to pass upon every point fairly raised, and I do not question its exercise. It is true, that had the decision rested upon that ground alone, I would not have concurred with my brethren, for two reasons: First, it was my understanding that the brick-yard had been removed from its former location, and that the fact was conceded. I prefer, however, not to extend this fruitless discussion by stating my second ground of objection to the position referred to.

I must not, and I think will not, be understood as maintaining that the doctrine established in England, and in many of the most respectable Courts of America, that the jury can determine as a rule whether there was negligence, prevails here, in view of our own adjudications; but I do contend that where the facts are voluminous and the testimony conflicting, or the inferences numerous, the trial Judge should not be held to have erred for failing to give suppositious instructions *ad infinitum*, though correct as legal propositions, any more where a railroad company has killed a man than where one citizen has slain another. I insist that the opinion of the Court establishes not only a peculiar but

an indefinite rule in a particular class of cases, and makes it almost impossible to avoid error in a long complicated case involving many conflicts in the evidence upon various points, and tends therefore to delay and defeat the ends of justice.

In a somewhat extended investigation, I have failed to find that such a burden has been imposed upon *nisi prius* Judges under the rules of practice prescribed in any other State.

*Per curiam.*                                        New trial.